This is an involuntary commitment proceeding.
On July 21, 1988 Lizzie Alston filed a petition requesting the involuntary commitment of her brother, Otis Pope. In her petition Alston stated that Pope had threatened to kill other persons, that he had hit her over the head with a gun, and that he *Page 955 
had fired a gun into her car, which acts indicated that Pope was a threat to himself and others.
The writ to take Pope into custody was executed on July 25, 1988 — the same day the first hearing concerning Pope's detention was held (although not the day of the hearing on the merits). Attached to the writ was a copy of the petition and a notice.
The notice listed the following things: the date of the hearing (July 25, 1988) for determining whether detention was necessary pending a final hearing, Pope's right to be present at the hearing, Pope's right to hire an attorney or the court's responsibility to appoint one, Pope's right to offer evidence, confront witnesses and cross-examine them, as well as his right not to testify against himself, and a statement that after a final hearing Pope could be committed to a State facility for the treatment of the mentally ill.
The court's order following the July 25 hearing was to detain Pope until the date of the final hearing. The court originally scheduled this hearing for August 3, 1988, but rescheduled it for August 8, 1988.
Following the August 8 hearing, the court ordered involuntary commitment of Otis Pope.
He appeals from that order, asserting denial of due process in several areas: (1) that he was not afforded five days' notice prior to his probable cause hearing; (2) that he was improperly required to testify against himself at the probable cause hearing; and (3) that he was not afforded effective assistance of counsel due to the appointment of counsel only minutes before the final commitment hearing.
A resolution of these contentions requires that we interpret Alabama's Involuntary Commitment statutes.
We first address Pope's contention that he did not have adequate notice of the probable cause hearing. In Pope's view, section 22-52-3, Code 1975, requires that a person sought to be committed be giver notice of a probable cause hearing at least five days in advance. We disagree. Section 22-52-3 provides that "notice shall be served on the person sought to be committed at least five days prior to the date of thehearing." (emphasis added) In light of sections 22-52-7
and -8, Code 1975, we hold that "the hearing" in section22-52-3 refers only to a final hearing on the merits and not to a probable cause hearing.
Section 22-52-7 provides, in pertinent part:
 "(a) When a petition has been filed seeking to have limitations placed upon the liberty of a person pending the outcome of a final hearing on the merits, the probate judge shall order the sheriff of the county in which such person is located to serve a copy of the petition upon such person and to bring such person before the probate judge instanter." (emphasis added)
In other words, if the petition seeks to have a person placed in custody prior to the final hearing on the merits, the person sought has no due process right to any advance notice prior to being brought before the probate judge. The reasons for this procedure are obvious. The only valid grounds upon which a person sought to be committed may be held pending a final hearing on the merits are (1) to prevent the person from doing substantial and immediate harm to himself or others and (2) to prevent the person from leaving the jurisdiction. §22-52-7(b), Code 1975. To give such a person five days' advance notice of a hearing to determine whether he may be held in custody pending a final hearing would thus defeat the purpose of the statute. Therefore, we hold that the five day advance notice requirement of section 22-52-3 applies only to the final hearing on the merits. Because Pope had five days' advance notice of the final hearing in this case, the probate court properly complied with section 22-52-3.
Pope further contends that the probate court violated his due process rights in that it held a probable cause hearing immediately after he was taken into custody rather than following the procedure of section 22-52-7. As set out above, that section allows a potentially dangerous person to be brought before the probate *Page 956 
court immediately after being taken into custody. It further provides that:
 "[T]he probate judge shall determine from an interview with the person sought to be committed and with other available persons what limitations, if any, shall be imposed upon such person's liberty and what temporary treatment, if any, shall be imposed upon such person pending further hearings."
Pope argues that since he was subjected to an immediate probable cause hearing rather than an "interview" with the probate judge, his due process rights were violated. We disagree.
Undoubtedly, a properly conducted probable cause hearing provides far more procedural safeguards than an "interview" with the probate judge. In the interview procedure, the person sought to be committed is not even entitled to counsel. In fact, this interview is authorized only as an emergency procedure. Detention pursuant to such a procedure "can be justified only for the length of time required to arrange a probable cause hearing." Lynch v. Baxley, 386 F. Supp. 378
(M.D.Ala. 1974), rev'd on other grounds,651 F.2d 387 (5th Cir. 1981). In this case the probate court arranged a probable cause hearing immediately and thus avoided the potential abuses of the interview procedure.
As to a probable cause hearing in an involuntary commitment case, due process requires (1) adequate notice of the factual grounds upon which the proposed commitment is predicated and the reasons for the necessity of confinement, (2) representation by counsel, and (3) the presence of the person sought to be committed, unless he is so ill as to be incapable of attending. Lynch v. Baxley, supra. The petition served on Pope adequately notified him of the factual basis for the claim and the reasons for the necessity of confinement. Pope was present at the hearing and the court appointed counsel to represent his interests. The probable cause hearing therefore met all the requirements of due process.
Pope asserts that in addition to these requirements a court must give notice of a probable cause hearing "sufficiently in advance of [the hearing] so that reasonable opportunity to prepare will be afforded." Lynch, supra, (quotingIn re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527
(1967)). However, Lynch makes clear that this requirement applies only to "formal commitment proceedings," not to probable cause hearings. The only advance notice required prior to a probable cause hearing is notice of the factual basis for the proposed commitment and the reasons for the necessity of confinement. We hold that the procedure followed herein did not violate Pope's right to due process.
Pope's second contention is that the probate court improperly required him to testify against himself at the probable cause hearing. The privilege against self-incrimination is fully applicable at all stages of the civil commitment process.Lynch, supra. However, the person sought to be committed can waive that right. Lynch, supra. In the case at bar the original notice delivered to Pope prior to the probable cause hearing informed him in writing that he could not be compelled to testify against himself. Yet Pope, on the advice of counsel, took the stand anyway. Nothing in the record implies that Pope was incapable of giving his informed consent to testify or that he did not understand the notice given. In fact, a psychologist testified that Pope's reading skills are very good. In these circumstances, we hold that Pope validly waived his right against self-incrimination and that the probate court did not compel him to testify against his will.
Finally, Pope argues that he was denied effective assistance of counsel. The subject of an involuntary commitment proceeding has the right to counsel at all significant stages of the process, including a probable cause hearing and a hearing on the merits. Lynch, supra.
In order for an ineffective assistance of counsel claim to require reversal on appeal, the subject must show (1) that counsel's performance was deficient and (2) that this deficient performance prejudiced his case. *Page 957 Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's errors must have been so serious as to deprive the person sought to be committed of a fair trial. Strickland, supra.
Pope bases his ineffective assistance claim primarily on the brevity of his consultations with counsel. He met with counsel only a short time before the probable cause hearing. Counsel did not contact him at any time between the date of the probable cause hearing and the date of the hearing on the merits. The court appointed different counsel prior to the hearing on the merits and he met with this newly-appointed counsel for only a short time prior to the final hearing. However, mere brevity of consultation does not prove that counsel's performance was deficient. In fact, Pope's newly-appointed counsel for the final hearing was the partner of his first appointed counsel. She had thoroughly reviewed the evidence presented at the probable cause hearing and had discussed the case with Pope's original counsel and with the petitioner's counsel. At the probable cause hearing, counsel presented Pope's testimony fairly and adequately. At both hearings counsel thoroughly cross-examined the witnesses for the petitioner. At one point, counsel moved to dismiss the petition and forcefully argued Pope's position. In these circumstances, we cannot say that Pope's counsel performed deficiently or that his counsel's performance prejudiced his position.
Pope argues that the recent Alabama Supreme Court decision inEx parte Foster, [Ms. July 15, 1988] (Ala. 1988), requires the trial court to hold a hearing any time a party asserts an ineffective assistance of counsel claim. Here, the probate court refused to hold such a hearing. It did not err by doing so, because Foster does not require such a hearing in every case. In Foster a criminal defendant alleged, pro se, two very specific instances in which his trial counsel's performance was deficient. If true, the allegations might also have shown that his defense had been prejudiced. The supreme court remanded the case to the trial court for a hearing to take evidence as to these specific allegations. In contrast, Pope did not allege any specific deficiencies in his counsel's performance. Counsel hired by Pope to file the motion alleging ineffective assistance of counsel had not even listened to a tape nor read a transcript of either hearing prior to filing the motion. He based his allegation wholly upon the brevity of Pope's consultation with counsel. Under those conditions the probate court did not err in refusing to take evidence on Pope's ineffective assistance of counsel claim.
We are convinced that none of Pope's constitutional and statutory rights were violated in this case. We therefore affirm the probate court's judgment committing him to the State Department of Mental Health.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.