97 P.3d 767 (2004)
In re the Detention of T.A.H.-L.,
Snohomish County, Respondent,
v.
T.A.H.-L., Appellant.
No. 52754-1-I.
Court of Appeals of Washington, Division 1.
September 13, 2004.
*768 Jason Jerome Cummings, Snohomish CO Prosecutor, Seth Aaron Fine, Snohomish Co. Pros. Atty., Everett, WA, and Raymond J. Dearie, Bullivant Houser Bailey PC, Seattle, WA, for Respondent.
Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Appellant.
COX, C.J.
T.A. H.-L. ("H.-L.") appeals her involuntary 90-day civil commitment under chapter 71.05 RCW. We hold that a person who is the subject of a petition for involuntary commitment under this chapter has a statutory right to the effective assistance of counsel. The standard by which we review the effectiveness of counsel is that set forth in Strickland v. Washington.[1] In this case, the performance of counsel for H.-L. was neither deficient nor prejudicial. We affirm.
H.-L. has a significant history of mental illness and at least 12 prior hospitalizations for mental problems, including three at Western State Hospital. In May 2003, a sheriff's deputy called Snohomish County Designated Mental Health Professional Melanie Thompson to H.-L.'s eviction from her residence.[2] In response to Thompson's questioning, H.-L. mentioned an attack on her with anthrax and her neighbors' involvement with the mafia. At other times, she was *769 unresponsive. Her feet were blue and swollen, and her rented room was filled with garbage and contained no food. Although H.-L. denied that she needed medical treatment, Thompson called 911 and had H.-L. transported to Providence Hospital.
H.-L. has diabetes. At the hospital, staff determined that she was dehydrated, she had a urinary tract infection, and her blood sugar level was so high that without treatment she might have died within five days. Providence mental health staff initiated a 72-hour hold, and after three days she was transferred to Stevens Hospital's locked psychiatric ward. At Stevens, H.-L. voiced religious objections to her prescribed anti-psychotic medication and insulin injections.
In July 2003, the State petitioned under RCW 71.05.280 to have H.-L. involuntarily committed for 90 days. During the commitment trial, H.-L. testified about her religious beliefs, her opposition to some medications, and her use of prayer to treat her condition. H.-L.'s counsel did not object to testimony by social worker Bryan Sabinsky and Designated County Health Professional Preston Hess concerning the availability of less restrictive alternatives.
The jury found that the State should involuntarily commit H.-L. for a 90-day period and that a less restrictive alternative was not in her best interest. H.-L. was subsequently committed to Western State Hospital for an additional 180-day period under a separate petition for involuntary treatment.[3]
H.-L. appeals.

MOOTNESS
The State contends that H.-L.'s appeal is now moot because her 90-day involuntary commitment has expired. We hold that this case presents issues of continuing and substantial public interest that we shall decide.
"A case is technically moot if the court cannot provide the basic relief originally sought, or can no longer provide effective relief."[4] "In general, when a case involves only moot questions or abstract propositions, the appeal should be dismissed."[5] "A widely recognized exception to this general rule lies within the Court's discretion when the case concerns `matters of continuing and substantial public interest.'"[6] The criteria to be considered in determining whether a sufficient public interest is involved are: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination that will provide future guidance to public officers; and (3) the likelihood that the question will recur.[7]
We note that "[s]ince McLaughlin, this exception has been expressly invoked in at least six published cases involving application of the statutory civil commitment scheme."[8] No Washington case has addressed whether an individual who is subject to a civil commitment proceeding pursuant to chapter 71.05 RCW has a statutory or constitutional right to the effective assistance of counsel. H.-L. also contends that no Washington case has interpreted RCW 71.05.070, concerning a civilly committed person's right to "treatment by spiritual means." We conclude that, although moot, H.-L.'s appeal raises issues of "continuing and substantial public interest."
H.-L.'s appeal raises issues of public interest. "... [T]he need to clarify the statutory *770 scheme governing civil commitment is a matter of continuing and substantial public interest."[9] Clarification of the scope of the right to counsel in a civil commitment under chapter 71.05 RCW, and what role the right to spiritual treatment plays in the commitment hearing are necessary here.
The State's contention that H.-L.'s claim of ineffective assistance of counsel raises a private issue only is not persuasive. The predicate issues to H.-L.'s claim of ineffective assistance of counsel are whether she is even entitled to the effective assistance of counsel and whether the Strickland test is applicable here. These are not specific only to H.-L.'s case.
While the State contends that In re Detention of Smith[10] decided the ineffective assistance of counsel issue, that is not accurate. The Smith decision applied the Strickland analysis to sexually violent predator civil commitments under RCW 71.09, not RCW 71.05.[11] The Smith holding does not necessarily extend to a civil commitment under RCW 71.05. The two statutory schemes, while similar, are not identical, and identical treatment under both statutes is not mandated, as previous cases have emphasized.[12]
An authoritative determination to provide future guidance on this question, which is likely to recur, is desirable. Similarly, the need for clarification on the role of the right to spiritual treatment in a civil commitment proceeding, as articulated in RCW 71.05.070, presents an issue of continuing and substantial public interest. We therefore reach the merits of H.-L.'s appeal.

EFFECTIVE ASSISTANCE OF COUNSEL UNDER CHAPTER 71.05 RCW
H.-L. contends that she was denied her statutory and constitutional right to the effective assistance of counsel and that Strickland should govern this analysis. We hold that a respondent in a civil commitment proceeding pursuant to RCW 71.05 has the statutory right to the effective assistance of counsel. We also hold that the Strickland test states the proper standard to apply to determine whether the statutory right is protected in each case.
Chapter 71.05 RCW guarantees a civil commitment respondent the right to counsel at multiple stages in the commitment process.[13] The due process protection of the right to counsel articulated in chapter 71.05 RCW is meaningless unless it is read as the right to effective counsel.[14] Many other jurisdictions have recognized the statutory right to the effective assistance of counsel in this context.[15]
*771 We conclude that the subject of a civil commitment has a statutory right to the effective assistance of counsel, including the right to claim ineffective assistance of counsel as a basis for review.
We must next address what standard to apply to analyze whether counsel was effective. Both the State and H.-L. argue that the Strickland test is the correct one. We agree.
Although Strickland is rooted in Sixth Amendment protections that are not directly applicable to the civil commitment context, this standard is proper to apply here for a number of reasons.
First, Smith establishes the use of the Strickland standard for claims of ineffective assistance of counsel for sexually violent predator civil commitments pursuant to chapter 71.09 RCW.[16] There is no reason to distinguish between chapter 71.09 RCW and the relevant chapter here, 71.05 RCW, for the purpose of setting a standard for effective assistance of counsel. Both address involuntary, civil commitments.
Second, the Strickland standard is well known and supported by a well-developed body of case law. We see no reason to seek out or develop a different standard. This recognizable standard should insure that a civil commitment respondent receives the effective assistance of counsel established by chapter 71.05 RCW.
Finally, the majority of jurisdictions that have considered this issue have adopted the Strickland test to determine the effectiveness of counsel in civil commitment proceedings.[17] The Montana case, K.G.F., articulated the most significant discussion concerning reasons for rejecting the Strickland test. K.G.F. disapproved of Strickland's presumption of effective assistance in the civil commitment context because "reasonable professional assistance cannot be presumed in a proceeding that routinely accepts  and even requires  an unreasonably low standard of legal assistance and generally disdains zealous adversarial confrontation."[18] We do not share the Montana Supreme Court's dim view of the quality of civil commitment proceedings, or their adversarial nature, in the state of Washington. The Strickland standard *772 appears to be sufficient to protect the right to the effective assistance of counsel for a civil commitment respondent in this state.
We conclude that a respondent in a civil commitment proceeding under chapter 71.05 RCW has the statutory right to the effective assistance of counsel, as analyzed under Strickland.
H.-L. contends that her counsel was ineffective because he failed to propose a jury instruction concerning H.-L.'s right to spiritual treatment under RCW 71.05.070. She also contends that he was ineffective by failing to object to testimony concerning placement in a less restrictive alternative. Neither claim is persuasive.
To prevail on her claim of ineffective assistance of counsel, H.-L. must meet both prongs of Strickland's two-prong test.[19] She must first establish that her counsel's representation was deficient.[20] She may meet this burden by establishing that, given all the facts and circumstances, her attorney's conduct failed to meet an objective standard of reasonableness.[21] Deficient performance is not shown by matters that go to trial strategy or tactics.[22]
H.-L. must also show that the deficient performance resulted in prejudice such that "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different."[23] This Court employs a strong presumption that counsel's representation was effective.[24]
Pursuant to RCW 71.05.320, the central questions that a jury is to determine are (1) whether the respondent suffers from a mental disorder, (2) whether, as a result of that mental disorder, the respondent is gravely disabled, and (3) whether less restrictive alternatives to in-patient treatment are in the best interest of the respondent. The Legislature defines "gravely disabled" as:
... a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.... [[25]]

RCW 71.05.070
First, H.-L. contends that her counsel was ineffective for failing to propose a jury instruction concerning her right to spiritual treatment, under RCW 71.05.070. But this does not demonstrate deficient performance.
RCW 71.05.070 recognizes the right of one subject to civil commitment to treatment through spiritual means. "The provisions of this chapter shall not be construed to deny to any person treatment by spiritual means through prayer in accordance with the tenets and practices of a church or religious denomination."
In considering a statute, we must "assume that the legislature means exactly what it says,"[26] and we will "give words their plain and ordinary meaning."[27] We will construe statutes to avoid strained or absurd results.[28]
*773 RCW 71.05.070 does not announce a right to treatment by prayer in lieu of commitment, despite satisfaction of the statutory criteria for commitment. Rather, RCW 71.05.070 prevents treatment providers from denying a patient the right to treatment through prayer.
An instruction on H.-L.'s statutory right to treatment through prayer would not have assisted the jury in determining whether under RCW 71.05.320, H.-L. was gravely disabled. Likewise, it would not have assisted the jury to determine whether it was H.-L.'s religious beliefs or a mental disorder that caused her to refuse medication and fail to take care of her basic needs.
We note that H.-L.'s claim that the interpretation of RCW 71.05.070 is a matter of first impression is inconsistent with the claim that her counsel's performance was deficient because he failed to propose a jury instruction patterned on this statutory provision. The interpretation of this statute that H.-L. advances is not clearly applicable and has not been commented on by our courts. Under these circumstances, it is hard to see why counsel's performance is deficient in this respect.
H.-L. cites State v. Thomas[29] for the proposition that the failure to propose an appropriate jury instruction constitutes ineffective assistance of counsel.[30] Such a general proposition does not assist H.-L. because Thomas addressed the failure to propose a diminished capacity defense and is entirely distinguishable.[31] And, unlike in Thomas, H.-L.'s counsel was not deficient for failing to propose an instruction on the right to treatment by prayer.
More importantly, H.-L. cannot show prejudice. Her contention that she was unable to explain her resistance to certain medications without the instruction is unpersuasive because H.-L. did testify about her religious objections and the reasons for them. And although her religious beliefs may have justified her refusal of antipsychotic medications, there was additional evidence that H.-L. was incapable of caring for her basic needs, apart from any religious objections, that rendered her gravely disabled.[32] H.-L.'s inability to care for herself was so persistent that at the time of her initial hospitalization her blood sugar level was so high, she likely would have died within five days had insulin not been administered.

Less Restrictive Alternative
H.-L. also contends her counsel was ineffective because he failed to object to testimony concerning the availability of less restrictive alternatives to in-patient treatment. This argument is also unpersuasive.
The finder of fact in a civil commitment must determine whether a less restrictive alternative would be in the best interests of the civil commitment respondent.[33]
Although H.-L. contends that Hess and Sabinsky testified that there were no less restrictive alternative placements willing to accept her as a patient, this is not entirely correct. Rather, they testified that her refusal to take her medication required a more controlled placement environment.
Hess testified:
Q. Okay. Now, do you believe that there is a less restrictive alternative to in-patient *774 treatment available to Ms. [H.-L.] at this time?
A. No, I don't believe that there currently is a less restrictive alternative that's available.
Q. And why is that?
A. It's been considered. The social worker at Stevens Hospital has looked at some possibilities, and really the possibilities are limited because there is the medical element to her needs. And because she's require [sic] involuntary medication, even the insulin, it's almost impossible to expect that any less restrictive environment would be able to accomplish that, or legally even could accomplish that. It's really only a certified evaluation and treatment facility like a hospital, like Western State Hospital that would be able to administer involuntary medication.
Sabinsky testified,
Q. Now, in terms of your ability to pursue discharge planning for Ms. [H.-L.], have you found any locations that would be willing to accept her as a resident at this time?
A. No.
Q. And why is that?
A. Well, each less restrictive settings would require that a person be following, basically taking their mediations as prescribed and cooperating with treatment. Neither of those things have been demonstrated by Ms. [H.-L.] by her, and most facilities do a fairly extensive evaluation of exactly that
....
Q. In terms of your review of Ms. [H.-L.]'s ability to self manage her basic care needs, do you believe that there is a less restrictive alternative that could be available to her right now?
A. No, I do not.
Q. Why is that?
A. The primary issue would really be medications. There really is no facility able to manage someone who has significant health issues, who was not regularly taking their medications.
H.-L. fails to cite any relevant authority to support her contention that her counsel was deficient for failing to object to this testimony. Nor does she present any authority for the proposition that the testimony was inadmissible.
H.-L.'s reliance on In re Detention of R.A.W.[34] is misplaced. There, the court concluded only that an instruction informing the jury that the less restrictive outpatient facility must agree to assume responsibility for the patient before the court could order the outpatient placement was an incorrect statement of the law.[35]R.A.W. did not address the admissibility of testimony concerning why the subject of a civil commitment is not amenable to a less restrictive placement. Her reliance on In re Detention of J.S.,[36] on which R.A.W. relied, is similarly misplaced.
The State had the burden of proving that a less restrictive alternative was not in the best interests of H.-L. Testimony about why less restrictive alternatives were not in H.-L.'s best interest was clearly relevant.[37]
In short, H.-L. fails to persuade us that her counsel's performance in this respect was deficient.
Again, the absence of prejudice requires that we reject her claim. She suggests that a reasonable juror would not find that a non-existent placement was in a gravely disabled person's best interest. But the testimony by Hess and Sabinsky was not about bed availability. Rather, it was about the limitations that H.-L.'s refusal to self-medicate placed on her ability to heal in a less structured environment. Although H.-L. argues that the judge could have ordered a placement, and established the terms of that placement,[38] *775 this does not include the ability to create a facility specifically designed for H.-L.'s unique needs.
Furthermore, H.-L.'s contention that the highlighted testimony was not relevant to the jury's determination of her best interests is erroneous. How H.-L. might fare in a less restrictive environment was critical to the jury's determination of whether such a placement was in her best interest.
H.-L. fails to demonstrate that her counsel in this proceeding was ineffective in any respect.
We affirm the Order of Civil Commitment.
AGID and APPELWICK, JJ., concur.
NOTES
[1] 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[2] See RCW 71.05.150.
[3] RCW 71.05.320(2).
[4] Snohomish County v. State, 69 Wash.App. 655, 660, 850 P.2d 546 (1993), review denied, 123 Wash.2d 1003, 868 P.2d 871 (1994) (citation omitted).
[5] In re Detention of A.S., 91 Wash.App. 146, 154, 955 P.2d 836 (1998); RAP 18.9(c)(2).
[6] A.S., 91 Wash.App. at 154-55, 955 P.2d 836 (quoting In re Matter of McLaughlin, 100 Wash.2d 832, 838, 676 P.2d 444 (1984)).
[7] In re Cross, 99 Wash.2d 373, 377, 662 P.2d 828 (1983); Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972).
[8] A.S., 91 Wash.App. 146, 955 P.2d 836, 841 (citing In re R.S., 124 Wash.2d 766, 881 P.2d 972 (1994); In re Swanson, 115 Wash.2d 21, 793 P.2d 962, 804 P.2d 1 (1990); In re LaBelle, 107 Wash.2d 196, 728 P.2d 138 (1986); In re J.R., 80 Wash.App. 947, 912 P.2d 1062, review denied, 130 Wash.2d 1003, 925 P.2d 989 (1996); In re Kirby, 65 Wash.App. 862, 829 P.2d 1139 (1992); In re Chorney, 64 Wash.App. 469, 825 P.2d 330 (1992)); see also In re Detention of C.W., 147 Wash.2d 259, 53 P.3d 979 (2002).
[9] LaBelle, 107 Wash.2d at 200, 728 P.2d 138 (citation omitted).
[10] 117 Wash.App. 611, 72 P.3d 186 (2003).
[11] Smith, 117 Wash.App. at 617-18, 72 P.3d 186.
[12] See In re Detention of Petersen, 138 Wash.2d 70, 93, 980 P.2d 1204 (1999) ("The procedures dealing with sexually violent predators need not mirror the procedures of chapter 71.05 RCW, given the different treatment needs of the populations subject to those acts."); In re Detention of Thorell, 149 Wash.2d 724, 750, 72 P.3d 708 (2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2015, 158 L.Ed.2d 496 (2004) ("differentiating between LRAs for those involuntarily committed under chapter 71.05 and the SVPA is a rational means to achieve these legitimate [state] objectives"); In re Detention of Ross, 114 Wash.App. 113, 119, 56 P.3d 602 (2002), review denied, 149 Wash.2d 1015, 69 P.3d 875 (2003) (the State has a legitimate interest in treating SVPs differently from the mentally ill committed under chapter 71.05 RCW because of risk of reoffense).
[13] RCW 71.05.200(1)(b) (right to counsel at probable cause hearing); RCW 71.05.300 (right to counsel at commitment trial); RCW 71.05.460 (right to counsel upon commitment to review the legality of detention).
[14] See Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ("... a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all."); see also In re Matter of Quesnell, 83 Wash.2d 224, 234, 517 P.2d 568 (1973) ("the right of the allegedly mentally ill person to the assistance of counsel must be considered and afforded in a meaningful way rather than in form only").
[15] Matter of Carmody, 274 Ill.App.3d 46, 54, 210 Ill.Dec. 782, 653 N.E.2d 977 (Ill.App. 4 Dist.,1995) (holding that "the State's statutorily providing a respondent in an involuntary commitment proceeding with the right to counsel implicitly includes the right to the effective assistance of that counsel," citing Strickland, 466 U.S. at 686, 104 S.Ct. 2052); In re Hutchinson, 500 Pa. 152, 454 A.2d 1008, 1011 (1982) (balancing the competing interests of the state and the individual to conclude that the right to counsel for a civil commitment must be interpreted as the right to effective counsel, noting "[f]or the legislatively-created right to representation to have meaning, counsel must be effective."); In re Mental Health of K.G.F., 306 Mont. 1, 29 P.3d 485 (2001) (concluding respondent in involuntary commitment has a right to the effective assistance of counsel where commitment statute announces right to counsel); State ex rel Memmel v. Mundy, 75 Wis.2d 276, 249 N.W.2d 573, 577 (1977) (subject of civil commitment has statutory right to the effective assistance of counsel); see also Jones v. State, 477 N.E.2d 353 (Ind.App. 2 Dist., 1985) (civil commitment respondent has due process right to effective assistance of counsel); Ex parte Ullmann, 616 S.W.2d 278, 283-84 (Tex.Civ.App.-San Antonio, 1981) ("The subject of an involuntary civil commitment proceeding has the right to effective assistance of counsel at all significant stages of the commitment process"); Pope v. Alston, 537 So.2d 953 (Ala.Civ.App., 1988) (reviewing claim of ineffective assistance of counsel on the merits and rejecting it).
[16] Smith, 117 Wash.App. at 617-18, 72 P.3d 186.
[17] Pope, 537 So.2d at 956-57 (applying the Strickland test to determine whether counsel for involuntary committee was ineffective); Carmody, 210 Ill.Dec. 782, 653 N.E.2d at 984 (concluding that the Strickland test "provides a reasonable and workable standard for reviewing claims of ineffective assistance of counsel"); In re Protection of H.W., 85 S.W.3d 348, 356 (Tex.App.-Tyler, 2002) (adopting the Strickland test to determine whether counsel for the subject of a civil commitment was ineffective); Jones, 477 N.E.2d at 357 ("In considering what constitutes effective representation, it seems reasonable to look to criminal standards for guidance. Such an approach seems justified inasmuch as the allegedly mentally ill person's liberty is at stake."). Contra Hutchinson, 454 A.2d at 1011 (the test for effective assistance of counsel is whether, upon reviewing the record, the court can ascertain "whether counsel's actions had a reasonable basis designed to effectuate his client's interests."); K.G.F., 29 P.3d at 500-01 (declining to adopt the Strickland test as "not going far enough to protect the liberty interests" of the involuntarily committed and instead announcing that upon a showing of substantial evidence that any of five "critical areas" of representation  appointment of competent counsel, initial investigation, client interview, right to remain silent, and counsel advocacy  were deficient, counsel would be deemed ineffective).
[18] K.G.F., 29 P.3d at 491-92 (internal quotes omitted).
[19] See State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995).
[20] State v. Hendrickson, 129 Wash.2d 61, 77, 917 P.2d 563 (1996).
[21] State v. Huddleston, 80 Wash.App. 916, 926, 912 P.2d 1068, review denied, 130 Wash.2d 1008, 928 P.2d 413 (1996).
[22] Hendrickson, 129 Wash.2d at 77-78, 917 P.2d 563.
[23] Hendrickson, 129 Wash.2d at 78, 917 P.2d 563.
[24] McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
[25] RCW 71.05.020(14).
[26] Morgan v. Johnson, 137 Wash.2d 887, 891-92, 976 P.2d 619 (1999).
[27] State v. Keller, 98 Wash.App. 381, 383-84, 990 P.2d 423 (1999).
[28] State v. Akin, 77 Wash.App. 575, 580, 892 P.2d 774 (1995).
[29] 109 Wash.2d 222, 743 P.2d 816 (1987).
[30] Thomas, 109 Wash.2d at 228, 743 P.2d 816.
[31] Thomas, 109 Wash.2d at 228, 743 P.2d 816.
[32] See e.g., Report of Proceedings on July 29, 2003 at 37 (rented room, from which H.-L. was being evicted, was without food and filled with garbage); Report of Proceedings on July 29, 2003 at 39, Report of Proceedings on July 30, 2003 at 135 (feet were swollen and blue, suffering from dehydration, and blood sugar level dangerously elevated at time of eviction); Report of Proceedings on July 30, 2003 at 138, 112 (excessive blood sugar level that did not abate due to continued consumption of improper diet); Report of Proceedings on July 30, 2002 at 138 (belief that she had a special form of diabetes that did not require insulin and allowed her to eat what she wanted); Report of Proceedings on July 30, 2003 at 138 (belief that people had been injecting sugar into her food); Report of Proceedings on July 31, 2003 at 10-11 (belief that poor eyesight was from anthrax attack rather than diabetes-related complication).
[33] RCW 71.05.320.
[34] 104 Wash.App. 215, 15 P.3d 705 (2001).
[35] R.A.W., 104 Wash.App. at 221, 15 P.3d 705.
[36] 124 Wash.2d 689, 880 P.2d 976 (1994).
[37] ER 401 ("`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").
[38] See R.A.W., 104 Wash.App. at 223, 15 P.3d 705 (quoting J.S., 124 Wash.2d at 701, 880 P.2d 976) ("Chapter 71.05 RCW does not, however, `mandate less restrictive treatment options regardless of their existence or availability.'").