# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 55415-1-II |
| J.G., | |
| Appellant. | UNPUBLISHED OPINION |

CRUSER, J. – JG appeals the order detaining him for involuntary treatment. The trial court

found that involuntary treatment was warranted because JG (1) was gravely disabled under RCW

71.05.020(24),[1] and (2) he presented a substantial likelihood of repeating acts similar to the

criminal acts for which he had been determined incompetent to stand trial. JG challenges the

portion of the order finding him gravely disabled, arguing that there was insufficient evidence to

establish that he was gravely disabled under RCW 71.05.020(24).[2] He also argues that the trial

---

[1] Although the legislature has amended this statute several times since the petition at issue here was filed, the amendments have only changed the subsection number. Accordingly, we cite to the current version of the statute.

[2] JG's failure to challenge the second basis on which he was committed, the substantial likelihood of repeating similar criminal acts for which he had been found incompetent to stand trial, does not relieve us of our obligation to consider his challenge to the gravely disabled finding. This is so because an individual's prior grave disability findings have potential collateral consequences. *See In re Det. of M.K.*, 168 Wn. App. 621, 628 n.8, 279 P.3d 897 (2012) (respondent's current symptoms and behaviors may be considered in conjunction "with symptoms or behavior which preceded and led to a past incident of involuntary hospitalization, severe deterioration, or one or more violent acts") (quoting RCW 71.05.245).

court erred in concluding that a less restrictive alternative (LRA) placement was not in his best interest.[3]

We hold that the evidence was insufficient to support the gravely disabled finding. But we further hold that the evidence was sufficient to support the finding that an LRA placement was not in JG's best interest. Accordingly, we reverse the portion of the order of commitment finding JG gravely disabled, and we affirm the trial court's decision to not order an LRA placement based on the unchallenged ground for commitment. We remand this matter to the trial court to strike the gravely disabled finding from the order of commitment, and otherwise affirm the order.

FACTS

I. BACKGROUND

JG, who has been diagnosed with schizophrenia, was involuntarily hospitalized at Western State Hospital (WSH) from 2014 to 2019. Sometime in early 2020, JG was detained and placed in a 90-day LRA placement. JG left this placement and was reported as a missing person.

By early August 2020, JG had been voluntarily admitted for psychiatric treatment at St. John's Medical Center in Longview, where he assaulted and threatened to kill hospital staff. The State charged JG with two counts of third degree assault and one count of felony harassment.

After JG was found incompetent to assist with his own defense, the felony charges were dismissed without prejudice. The criminal court ordered that JG be admitted to WSH for up to 14 days for a civil commitment evaluation.

---

[3] Although this order has expired, this case is not moot because it has potential collateral consequences. *Id.* at 629.

On October 12, 2020, JG's treatment providers petitioned for 180 days of involuntary treatment. The petitioners asserted that (1) JG was gravely disabled under RCW 71.05.020(24) (a) and (b), and (2) JG had been found incompetent to stand trial and his felony charges had been dismissed and that, as a result of a mental disorder, he "present[ed] a substantial likelihood of repeating similar acts." Sealed Clerk's Papers (CP) at 3. They also asserted that JG was not ready for an LRA placement.

## II. TRIAL

At the November 23 bench trial on this petition, registered nurse Jeffrey Eaton and psychologist Brian Young testified for the petitioners. JG did not present any evidence.

### A. EATON'S TESTIMONY

Eaton, a registered psychiatric nurse at St. John's Medical Center, testified that JG "had been a voluntary patient" in the psychiatric unit at St. John's. Sealed Verbatim Report of Proceedings (VRP) at 14. JG was in the "locked unit. . . . [b]ecause he was not directable." *Id.* Eaton testified that JG "loses his temper very easily if his demands weren't met" and that "[h]e would not follow directions." *Id.*

On the day of the assault, Eaton and another staff member, Josh Green, had intervened when JG was acting aggressively towards a certified nurse's aide (CNA). When the CNA and Eaton told JG to return to his room, JG turned to Eaton and said, " 'I am going to fuck you up, bitch;' " punched Eaton in the side of the face; and put Eaton in a headlock. *Id.* at 16. Green was able to grab JG, and Eaton and Green forced JG into the wall. During this process, Green was also "thrown into the wall rather hard." *Id.* JG continued to struggle even after they were able to get him to the ground, and he threatened to kill Eaton.

B. YOUNG'S TESTIMONY

Young, one of the petitioners, testified that he had reviewed JG's records, had attempted to interview him, and had spoken to staff at WSH and the Cowlitz County Jail who had "worked with" JG.[4] *Id.* at 19. JG had refused to allow Young to interview him.

Based on JG's history, Young concluded that JG suffered from "[s]chizophrenia and a history of substance abuse issues." *Id.* at 20. He had "recently exhibited paranoid thinking, signs of hallucination, [and] social isolation." *Id.* Some staff had noted recent improvement in his symptoms. But on October 22, JG had "allegedly committed an unprovoked assault on another patient on the ward." *Id.* at 21.

Based on his review of the records and medication compliance, Young concluded that JG had limited insight into his mental health condition. Young commented that JG had a history of refusing his medications, but that he "ha[d] been willing to take his prescribed antipsychotic medication recently," suggesting that JG had some awareness of his mental health condition. *Id.*

Young further stated that JG's records showed that JG had impaired judgment or an impaired perception of reality but that he was not currently suffering from any delusional thought processes. Young stated, "It's common that when people commit unprovoked assaults on the ward, that there is persecutory delusional thinking driving that, but we don't have any really solid evidence of that's what happened." *Id.* at 22.

When asked if, in his professional opinion, JG "would [ ] consistently be able to ensure for his own basic health and safety needs" if released from WSH that day, Young responded that he

---

[4] The trial court admitted Young's testimony under ER 703.

had "concerns about that since [JG] has not been willing to communicate very much with staff." *Id.* Because of the lack of communication, the staff "don't really know how [JG] would meet his basic needs in the community." *Id.* But "[h]istorically, there is cause for concern." *Id.* Young noted that JG "was hospitalized at [WSH] for nearly five years, from 2014 until 2019, and then . . . earlier in 2020, he was detained at one point by the [designated crisis responders] in Mason or Thurston County and then he was on an LRA, 90-day LRA." *Id.* at 22-23. At the time of his arrest, JG had been reported as missing and had apparently "walked away from his housing in the community." *Id.* at 23.

Young then provided examples of how schizophrenia could potentially interfere "with a person's ability to care for themselves." *Id.* Noting that JG's records showed that he had experienced auditory or sensory hallucinations, Young commented that delusional thinking, hallucinations, and disorganized thinking could create issues. For instance, the person could abandon housing based on beliefs that were not grounded in reality, assault someone, not take their medications, or not seek medical help when needed because a voice had told them to do so. When asked if JG could currently make rational decisions regarding his treatment, Young responded that based on a review of JG's treatment records, "the preponderance of the evidence would suggest no." *Id.* at 25. Young opined that JG's mental health issues placed him at risk of serious physical harm if he were to be released, but Young did not state that he was aware of any specific facts demonstrating that JG was at risk of serious physical harm.

Young further opined that JG was gravely disabled as a result of a mental disorder. He also opined that the continued hospitalization was currently in JG's best interest. This was based on the available records and staff interviews, the unprovoked assault on another patient on October 22,

"the earlier partial medication compliance," and the more recent full compliance. *Id.* When asked if he had a professional assessment of whether JG's behavior could worsen or continue if released, Young responded that he had "concerns that might worsen given the history of substance abuse." *Id.* at 26. And he had concerns about whether JG would continue his antipsychotic medication if released.

Young also testified that at that time there was no LRA placement within WSH that he would recommend, but that this could be possible if JG continued to comply with his medication and his symptoms continued to improve.

### III. TRIAL COURT'S DECISION

The superior court issued written findings of fact and conclusions of law and an order committing JG for involuntary treatment. The court found that JG's felony charges had been dismissed due to his incompetency; that JG had committed the felony of third degree assault against Eaton; and that "as a result of a behavioral health disorder, [JG] presents a substantial likelihood of repeating similar acts." CP at 22. The court also found that JG continued to be gravely disabled, under RCW 71.05.020(24)(a), "as a result of a behavior health disorder is in danger of serious physical harm resulting from the failure to provide for his . . . essential needs of health or safety." *Id.* at 23.

In the "Facts in Support" section, the court stated that JG's "current mental health status examination reveals: [JG] suffers from schizophrenia and has a history of substance abuse. He suffers from delusions, hallucinations, and disorganized thinking." *Id.* "Further, based on the petition and testimony of Petitioner, [JG]: Has an inability to care for himself and meet his basic needs as a result of a mental disorder." *Id.*

6

The court further found that an LRA was "not in the best interests of [JG] or others." *Id.* And the court concluded that, "as a result of a behavior health disorder," JG "presents/continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior," and "is/continues to be gravely disabled." *Id.*

The court ordered up to 180 days of intensive inpatient treatment. JG appeals.

ANALYSIS

I. GRAVELY DISABLED FINDING

JG argues that the evidence was insufficient to support the gravely disabled finding because the State failed to present substantial evidence that he was unable to care for his essential needs. He contends that the State failed to "present any recent, tangible evidence of [his] failure or inability to provide for his essential human needs" and that Young's opinion testimony regarding the challenges that persons with schizophrenia can face and JG's decision to leave his community housing situation were not sufficient to establish that he would not meet his basic needs if he was in the community. Br. of Appellant at 7. We agree.

When reviewing the trial court's decision on involuntary commitment, we consider whether the trial court's findings of fact are supported by substantial evidence and if the court's findings of fact support the court's conclusions of law and judgment. *In re Det. of T.C.*, 11 Wn. App. 2d 51, 56, 450 P.3d 1230 (2019). "Substantial evidence is the quantum of evidence sufficient to persuade a fair-minded person." *In re Det. of H.N.*, 188 Wn. App. 744, 762, 355 P.3d 294 (2015). When considering if there was sufficient evidence, we view the evidence in the light most favorable to the petitioners. *In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019). We do not review a trial court's decision regarding witness credibility or

the persuasiveness of the evidence. *H.N.*, 188 Wn. App. at 763; *In re Vulnerable Adult Petition for Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

RCW 71.05.020(24) provides:

"Gravely disabled" means a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

The trial court found JG gravely disabled under prong (a).

Young opined that JG was gravely disabled. Young's opinion was based on JG's history of prior involuntary commitment, the fact he had at one point been detained by a designated crisis responder in Mason or Thurston County after being released from his prior involuntary commitment, the fact he had walked away from an LRA, the fact he was being voluntarily treated for mental health issues when the assault occurred, and the fact JG had only recently become fully compliant with his medication regime. Young also testified that the effects of schizophrenia can interfere with a person's ability to meet their essential needs.

But the record contains no evidence regarding whether JG himself was unable to provide for his essential needs or that his inability to provide for his essential needs put him at risk of serious physical harm. The mere fact JG may have walked away from an LRA placement may show JG was not compliant, but it does not shed any light on whether he was able to provide for his essential needs while he was out in the community. Nor does the involvement of a crisis responder, a subsequent voluntary treatment, or evidence of noncompliance with his medications, without more, show that JG was unable to meet his essential needs. Absent any additional detail, there is the possibility that JG was perfectly able to care for himself but that he posed a risk of

8

harm to others. Because there was no evidence regarding JG's ability to provide for food, shelter, or other essential needs, the evidence is insufficient to support the gravely disabled finding under prong (a).

## II. LESS RESTRICTIVE ALTERNATIVE

JG further argues that the trial court erred by not ordering an LRA placement because the State failed to present evidence that an LRA would not be in JG's best interest. We disagree.

If the trial court finds that the individual is gravely disabled, then it must also determine whether the respondent's best interest or the best interest of others will be served by an LRA placement. *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 182, 97 P.3d 767 (2004). The petitioners have the burden of proving that an LRA placement is not in the respondent's or others' best interests. *Id.* at 186.

Here, the evidence supports the trial court's finding that an LRA placement was not in the best interest of JG or others. Young testified that JG was not yet ready for an LRA because he had only recently become "fully compliant" with his medications, he had a history of walking away from his last LRA placement, and that his symptoms had not yet sufficiently improved. VRP at 27. The record is also replete with evidence that JG was a risk to others when he was not compliant with his medication regime. Young also testified that at the time of trial, there was no LRA placement within WSH that he would recommend. Young's testimony regarding JG's treatment compliance, flight risk, and need for his symptoms to improve, and the evidence that JG could pose a risk to others if not compliant with his treatment, support the trial court's finding that JG was not yet ready for an LRA placement.

No. 55415-1-II

CONCLUSION

We reverse the portion of the commitment order finding JG gravely disabled, but otherwise affirm the order of commitment. We remand this matter back to the trial court to strike the gravely disabled finding from the order of commitment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

VELJACIC, J.