# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IN THE MATTER OF THE DETENTION OF:

K.G.,

Petitioner.

No. 85605-7-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Kim (the pseudonym chosen by K.G.) appeals a 14-day commitment order under the Involuntary Treatment Act, ch. 71.05 RCW. Kim argues she received ineffective assistance of counsel at her civil commitment hearing because her attorney wrongly stipulated that certain medical records were subject to the business records exception to the hearsay rule. Because Kim has not rebutted the strong presumption that counsel provided effective representation, we affirm.

I

On June 27, 2023, Kim appeared at a fire station and reported that her partner had assaulted her. An ambulance transported Kim to St. Anne's Hospital (St. Anne's), where she became erratic, talked about hearing demons, pounded on windows, and attempted to escape. A staff member at St. Anne's called a designated crisis responder (DCR) to evaluate Kim. The DCR determined Kim was gravely disabled due to a behavioral health disorder, and Kim was detained

on an initial 120-hour involuntary hold for further evaluation and treatment. Kim was then transferred to Fairfax Behavioral Health Hospital (Fairfax), where she became increasingly disorganized in her thinking and speech. She also became violent toward staff and other patients: she argued with another patient and poured a cup of tea on them, and she broke a brush in half and lunged toward another patient. Kim was not redirectable in either of these two incidents. Consequently, Fairfax filed a petition for up to 14-days of involuntary treatment.

As required by RCW 71.05.240, the trial court scheduled a probable cause hearing. Four witnesses testified at the hearing: (1) T.G., Kim's sister, who testified regarding Kim's violent and emotionally abusive behavior when off medication; (2) Hyemin Song, a licensed independent clinical social worker and records custodian for St. Anne's, who testified regarding Kim's behavior at St. Anne's; (3) Anita Vallee, a social worker, records custodian, and court evaluator for Fairfax, who testified regarding Kim's violent behavior at Fairfax; and (4) Kim, who testified regarding her mental state, out-patient healthcare options, and willingness to take medication.

The trial court also considered Kim's medical records from St. Anne's and Fairfax. Relevant here, the State's attorney asked Kim's attorney during the direct examination of Song, "Before we go any further, does defense stipulate the respondent's medical records from St. Anne's qualify under the business records exception to the hearsay rule?" Kim's attorney responded, "No objection." Song then read aloud portions of the St. Anne's medical records during her testimony. Later, during the State's direct examination of Vallee, the State's attorney again

asked Kim's attorney to "stipulate . . . that records from Fairfax qualify under the business records exception to the hearsay rule." Once again, Kim's attorney responded, "Yeah." Vallee then read aloud portions of the Fairfax medical records during her testimony.

At the conclusion of the hearing, the trial court ruled that Kim presented a likelihood of serious harm to others and was gravely disabled under RCW 71.05.020(25)(b) and RCW 71.05.240(4)(a). The court subsequently entered a written ruling that both supplemented and incorporated its oral findings and conclusions. This timely appeal followed.

II

Kim argues she received ineffective assistance of counsel at her civil commitment hearing because her attorney wrongly stipulated that the St. Anne's and Fairfax medical records at issue are subject to the business records exception to the hearsay rule. We disagree.

"[A] respondent in a civil commitment proceeding . . . has the statutory right to the effective assistance of counsel." *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 178, 97 P.3d 767 (2004). To prevail on a claim of ineffective assistance of counsel, Kim must first show that her attorney's conduct was deficient. *Id*. at 181. We employ a "strong presumption that counsel's representation was effective." *Id.* at 182. Kim must "meet this burden by establishing that, given all the facts and circumstances, her attorney's conduct failed to meet an objective standard of reasonableness." *Id.* at 181. Kim must then show "that the deficient performance resulted in prejudice such that 'there is a reasonable probability that, but for

counsel's errors, the result of the trial would have been different.'"  *Id.* at 182 (quoting *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)).

Under RCW 71.05.310, civil commitment hearings "shall in all respects accord with . . . the rules of evidence."  The rule of evidence at issue here is the hearsay rule.  ER 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Under ER 802, "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute."  One such exception is the business records exception, which is codified by RCW 5.45.020 as follows:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

As explained by our Supreme Court, "'business records are presumptively reliable if made in the regular course of business and there was no apparent motive to falsify.'"  *In re the Welfare of M.R.*, 200 Wn.2d 363, 378, 518 P.3d 214 (2022) (quoting *State v. Ziegler*, 114 Wn.2d 533, 538, 789 P.2d 79 (1990)).

Our Supreme Court squarely addressed the admissibility of medical records under RCW 5.45.020 in *M.R.*  The court there analyzed whether an incident report from a drug rehabilitation and testing center qualified under the business records exception.  200 Wn.2d at 383.  The court began by stating the applicable five-part test:  (1) the document at issue must be in the form of a record; (2) it must be of an act, condition, or event as opposed to a recorded opinion or statement of cause;

(3) it must be made in the regular course of business; (4) it must be made at or near the time of the act, condition, or event; and (5) the court must be satisfied that the sources of information and method and time of preparation were such as to justify its admission.  *Id.* at 377.

The court then applied this five-part test to the incident report at issue:

The January 30, 2020, incident report is a written record of D.R.'s visit to KRC and his failure to provide a UA sample.  It was created in the normal course of KRC's business for internal business purposes (and not as evidence to be used at trial), and it was created within 24 hours of the incident.  In addition, it was based on personal observations that did not consist of opinion or conclusions relying on specialized skill, judgment, or discretion.  It was introduced through a records custodian, and no evidence was produced that otherwise called into question its reliability.

*Id.* at 387.  Having concluded that the incident report satisfied all five elements, the court held, "The judge did not commit an abuse of discretion in admitting the incident report as a business record under RCW 5.45.020."  *Id.*

Quoting *M.R.*, 200 Wn.2d at 379, Kim argues that the "business records exception generally applies to objective records of a regularly recorded activity and not those 'reflecting the exercise of skill, judgment, and discretion.'"  She then cites numerous pages of testimony where a witness read aloud portions of medical records and summarily asserts, without any detailed analysis, that the business records exception does not apply to these medical records because "[m]ost entries in these documents contained subjective observations or conjecture and not verifiable objective data that is kept as part of the regular business operations."

This argument fails because Kim does not specify which entries purportedly contain "subjective observations or conjecture," and we "will not review issues for

which inadequate argument has been briefed or only passing treatment has been made." *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004). To the extent we can identify the medical records at issue and ascertain their contents, the records appear to generally describe Kim's behavior, symptoms, prescribed medication, and statements to medical providers and do not consist of subjective observations or conjecture as Kim claims. Consequently, Kim is unable to establish deficient performance by her attorney at her civil commitment hearing.

Moreover, even if the medical records at issue are not subject to the business records exception to the hearsay rule, Kim's ineffective assistance of counsel argument fails for yet another reason. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v. Carson*, 184 Wn.2d 207, 218, 357 P.3d 1064 (2015) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). While portions of Kim's medical records may have supported the State's arguments, other portions appear to support her defense. Kim's attorney asked Vallee to read from one of the medical records to show that Kim was "making requests at the nursing station" for medication and was able to independently perform activities of daily living. Kim's attorney also referred to the medical records in closing argument to emphasize

that Kim was taking her medication as prescribed and was able to verbalize her needs. Thus, it was a legitimate trial strategy to stipulate, as Kim's attorney did, that the medical records at issue are subject to the business records exception to the hearsay rule. Such conduct cannot properly be characterized as deficient.

Turning to the second prong of the ineffective assistance of counsel test, Kim also has not established "that the deficient performance resulted in prejudice." *T.A.H.-L.*, 123 Wn. App. at 182. Kim claims that her lawyer's deficient representation was prejudicial because the trial court relied on the medical records at issue in both its oral and its written rulings. But the record includes substantial evidence, not challenged on hearsay grounds, that Kim presented a likelihood of serious harm to others and was gravely disabled under RCW 71.05.020(25)(b) and RCW 71.05.240(4)(a). For example, Kim testified "I'm better off in assisted living with -- from DHS, long-term care, because I can't be alone." She also acknowledged, "I have cut my legs. I tried to drown myself in the bathtub . . . ." And both Song and Vallee testified regarding Kim's behavior at St. Anne's and Fairfax without reliance on medical records that Kim claims are inadmissible under the hearsay rule. Thus, even if Kim could establish that her attorney's conduct was deficient, she has not established, as she must to prevail, that "'there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.'" *T.A.H.-L.*, 123 Wn. App. at 182 (quoting *Hendrickson*, 129 Wn.2d at 78).

Lastly, Kim relies heavily on *In re the Welfare of J.M.*, 130 Wn. App. 912, 125 P.3d 245 (2005), but her reliance is misplaced. The trial court in *J.M.*

terminated the parental rights of R.C. to her six-year-old daughter, J.M. *Id.* at 916. On appeal, R.C. complained about her attorney's failure to challenge the admissibility of written reports that contained the psychological assessments, progress notes, and recommendations of several expert witnesses who did not testify. *Id.* The court held, "The records at issue here were hardly routine clerical notations of the occurrence of objective facts. The evidence documented in these records involved a high degree of skill of observation, analysis, and professional judgment. The business records exception does not, then, apply." *Id.* at 924.

Here, unlike in *J.M.*, the portions of the medical records that appear to be at issue generally recount objective facts—such as Kim's behavior, symptoms, prescribed medication, and statements to medical providers—and do not rely on the type of skilled observation or analysis that Washington courts have deemed inadmissible under the business records exception. Additionally, unlike defense counsel in *J.M.*, Kim's attorney stipulated to the admissibility of the medical records at issue for legitimate strategic or tactical reasons. Contrary to Kim's argument, *J.M.* does not require reversal here.

Affirmed.

_____
Feldman, J.

WE CONCUR:

_____          _____
Birk, J.                                                      Bowman, J.