72 P.3d 186 (2003)
117 Wash.App. 611
In the Matter of the DETENTION OF Kim Michael SMITH.
State of Washington, Respondent,
v.
Kim Michael Smith, Appellant.
No. 50337-5-I.
Court of Appeals of Washington, Division 1.
May 27, 2003.
Publication Ordered June 24, 2003.
*187 Christopher Gibson, Nielsen, Broman & Koch, Seattle, WA, Catherine Glinski, Manchester, WA for Appellant.
Steven Gary Rosen, Attorney General's Office, Criminal Division One, Seattle, WA, for Respondent.
AGID, J.
Kim Smith appeals his civil commitment, arguing his commitment order should be vacated and the case remanded for a new commitment trial because the trial court failed to consider less restrictive alternatives (LRAs) to confinement and improperly ordered him to comply with a CR 35 examination. Smith also contends that because defense counsel agreed to the CR 35 evaluation, he received ineffective assistance of counsel. The trial court did consider LRAs in reaching its decision, and the CR 35 evaluation was proper under the law in effect at the time. We therefore affirm the order of commitment.

FACTS
In 2000, the State began considering whether to file a petition seeking the involuntary civil commitment of Kim Smith as a sexually violent predator (SVP) under RCW 71.09 et seq. The State asked Dr. Leslie Rawlings, a licensed psychologist, to review Smith's file, interview him, and form an opinion on whether he met the statutory definition of an SVP. Dr. Rawlings reviewed the defendant's record, but Smith refused the interview. Dr. Rawlings' opinion, based on Smith's records, was that he met the definition.
The State then filed a petition in Snohomish County Superior Court asking that Smith be involuntarily committed. On August *188 15, 2001, the State and Smith agreed to a CR 35 examination, which authorized Dr. Rawlings to perform a mental examination. The interview did not change Dr. Rawlings' opinion that Smith was an SVP.
Dr. Rawlings testified that Smith had a mental abnormality and an antisocial personality disorder. He also testified that it would not be in Smith's or the community's best interests to release him to an LRA. He opined that Smith would likely reoffend if released on an LRA because he had massive problems while on probation and exhibited deceptive and manipulative behavior.
Steve Hawley testified for the defense. At the time of trial, he was a forensic therapist at the Special Commitment Center. He initially said Smith should be released to an LRA. However, by the end of his testimony, Hawley had "serious concern" about that recommendation because of his recent disclosures about deviant fantasies and masturbatory habits. Ultimately, Hawley was unable to give an opinion, based on what he knew, about whether the defendant should be released to an LRA.
In its written findings of fact, the trial court found that "[t]he Respondent has a high risk of reoffense" and that "[n]o witness recommended that the Respondent should be released to an LRA." In its conclusions of law, the trial court stated "[t]he evidence presented at the Respondent's trial proves beyond a reasonable doubt that, at this time, an LRA is not in the Respondent's best interests and is not in the best interests of others." The court's conclusions also stated that "it will consider any request by the Respondent to be released to an LRA pursuant to RCW 71.09.090." Accordingly, the trial court entered an order committing Smith to the care, custody and control of the Department of Social and Health Services. Smith appeals.

DISCUSSION
I. Less Restrictive Alternatives to Confinement
Smith initially contends his civil commitment order should be vacated because the trial court failed to consider LRAs at his commitment trial. In In re Detention of Brooks,[1] the Washington Supreme Court held that "[t]he equal protection clauses of the federal and state constitutions require that less restrictive alternatives (LRAs) to confinement be considered at the commitment trials of those committed under chapter 71.09 RCW...." Because the trial court's unchallenged written findings clearly indicate it considered an LRA, it complied with Brooks and we must reject Smith's argument.
The trial court's findings provide in part:
Dr. Rawlings testified that it is his opinion, to a reasonable degree of psychological certainty, that a less restrictive alternative to total confinement ("LRA") is not appropriate for the Respondent. Such a release is not in the best interests of the Respondent, nor can LRA conditions be imposed that adequately protect the community. Dr. Rawlings based his opinion on the fact that completing treatment at the SCC is in the Respondent's best interests. Such completion would not only further reduce the Respondent's likelihood of reoffense and thereby reduce his chances of receiving a minimum life sentence, but it would protect his somewhat fragile mental state as compared to his release to a very restrictive LRA in the community.
. . . .
No witness recommended that the Respondent should be released to an LRA.
The court then concluded:
The evidence presented at the Respondent's trial proves beyond a reasonable doubt that, at this time, an LRA is not in the Respondent's best interests and is not in the best interests of others.
Smith fails to address these or any findings. Unchallenged findings are verities on appeal.[2]
*189 Instead, Smith relies on the court's statements at the commitment trial that it did not have enough information to "realistically consider a less restrictive alternative at this time." The court also said:
I'm finding I don't have enough information. In the absence of information, I would have to make that finding, but I don't think that I have had full information about an LRA to really make a definitive conclusion whether he is appropriate for LRA or not.
According to Smith, the court mistakenly believed that, having found Smith met the statutory definition of a sexually violent predator, it was required to grant the commitment petition, even though it could not resolve the LRA issue based on the evidence. We disagree with that interpretation of the court's ruling.
This court need not consider the trial court's oral ruling because it is not necessary to our understanding its written one. We do not look beyond the trial court's written findings and conclusions unless they are inadequate.[3] "In the absence of a written finding on a particular issue, an appellate court may look to the oral opinion to determine the basis for the trial court's resolution of the issue."[4] Because the trial court's written findings specifically indicate it considered LRAs, we may not impeach them by referring to the oral ruling. And even if we review the court's oral ruling, it indicates the court in fact considered LRAs. The trial court noted that no one other than Smith's attorney recommended his release to an LRA. It also observed that his using marijuana at the special commitment center six months after the SVP petition was filed was more than a momentary lapse in judgment. Rather, it was a real indicator that Smith was not able to abide by rules in an LRA. The court also stated:
When his own treating therapist or former therapists are agreeing that that raises more than a red flag, but is enough for them not to recommend at this time a less restrictive alternative, I agree with that conclusion....
The court concluded that "I am concerned that the risk factors at this time, for the reasons I have mentioned, weigh against a less restrictive alternative."
Smith also relies on conclusion of law 10, which says: "The Court notes that it will consider any request by the Respondent to be released to an LRA pursuant to RCW 71.09.090." He asserts that this conclusion creates an ambiguity and implies that the court did not consider LRAs. This assertion is unpersuasive. The conclusion does nothing more than recite the requirements of RCW 71.09.090(2)(a), which provides:
Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval. The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over the secretary's objection....
Conclusion of law 10 does not create an ambiguity. Accordingly, we conclude the trial court satisfied the Brooks requirement because there is ample, unchallenged evidence in the record indicating it considered less restrictive alternatives to confinement.
II. CR 35 Examination
Smith argues his commitment should be reversed and a new trial held because the trial court improperly admitted Dr. Rawlings' testimony about the CR 35 examination. The State contends there was no error because the law at the time entitled the State to CR 35 examinations. Smith fails to respond to this argument. We agree with the State.
At the time the trial court ordered the CR 35 examination, we had ruled in In re Detention of Williams[5] that the State was permitted *190 to do an examination under the Civil Rules. When he learned the Supreme Court granted review in Williams,[6] Smith moved to strike the CR 35 evidence. The trial court properly denied the motion because the Supreme Court had not yet published a decision. It was not until October 10, 2002, that the Supreme Court reversed our decision. That was six months after the trial court entered Smith's civil commitment order and over a year after the trial court ordered the CR 35 exam. The court's order was therefore proper under the law at the time of entry.
III. Ineffective Assistance of Counsel
Based on defense counsel's agreement to the CR 35 examination, Smith argues his counsel was ineffective. He claims counsel agreed to the examination only because of his own incorrect interpretation of the law, mistakenly believing that the State need not show good cause for a CR 35 examination. Review of an ineffective assistance claim begins with a strong presumption that counsel's conduct was effective.[7] To be successful, the defendant must establish that counsel's conduct fell below an objective standard of reasonableness, and but for counsel's error, there is a reasonable probability the outcome would have been different.[8] A defendant did not receive ineffective assistance if counsel's conduct constitutes legitimate trial strategy or tactics.[9]
While both parties present several arguments on the question of deficient conduct, we need not decide the issue because, even if counsel's performance was deficient, suppressing the CR 35 testimony would not have changed the outcome of the trial. The record establishes that Dr. Rawlings' opinion of Smith was the same before and after the examination. Thus, while the examination may have reinforced Dr. Rawlings' opinion, it did not change it. Thus, it is doubtful that it affected the outcome of the trial. We therefore conclude Smith's counsel was not ineffective.
Affirmed.
NOTES
[1] 145 Wash.2d 275, 279, 36 P.3d 1034 (2001).
[2] Brewer v. Brewer, 137 Wash.2d 756, 766, 976 P.2d 102 (1999).
[3] In re Detention of LaBelle, 107 Wash.2d 196, 219, 728 P.2d 138 (1986).
[4] In re Marriage of Griffin, 114 Wash.2d 772, 777, 791 P.2d 519 (1990).
[5] 106 Wash.App. 85, 22 P.3d 283 (2001), aff'd in part, rev'd in part, 147 Wash.2d 476, 55 P.3d 597 (2002).
[6] 144 Wash.2d 1016, 32 P.3d 284 (2001).
[7] State v. Red, 105 Wash.App. 62, 66, 18 P.3d 615 (2001), review denied, 145 Wash.2d 1036, 43 P.3d 20 (2002).
[8] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[9] State v. Goins, 113 Wash.App. 723, 743, 54 P.3d 723 (2002) (citing State v. Adams, 91 Wash.2d 86, 90, 586 P.2d 1168 (1978)).