114 P.3d 658 (2005)
In re DETENTION OF: Roy Donald STOUT, Jr.
State of Washington, Respondent,
v.
Roy Donald Stout, Jr., Appellant.
No. 53332-1-I.
Court of Appeals of Washington, Division 1.
May 2, 2005.
Publication Ordered June 10, 2005.
*659 Elaine L. Winters, Washington Appellate Project, Seattle, Counsel for Appellants.
Malcolm Ross, Attorney General of Washington, Seattle, Counsel for Respondents.
BAKER, J.
Roy Donald Stout, Jr. appeals his commitment as a sexually violent predator. He argues, among other things, that the State was required to reprove at his commitment hearing that he committed burglary, which was the crime that he was incarcerated for when the State filed a commitment petition under chapter 71.09 RCW. We hold that the State was not required to reprove that Stout committed burglary. It was only required to prove that the burglary was sexually motivated. Further, Stout's counsel was not ineffective, and the superior court's findings are supported by sufficient evidence. We affirm.

I.
Stout pleaded guilty to first degree burglary in 1997. He was originally charged with indecent liberties for touching Tammy Dyer without consent. The incident occurred when Stout visited Dyer at home one afternoon and she invited him in to talk. Stout directed Dyer's children into a bedroom by speaking sharply to them. After the children left the living room, Stout tried to move his hand up Dyer's thigh, placed his hand on her breast, and attempted to kiss her. She resisted and Stout pushed her back on the couch by placing his hand across her throat. His thumb left a light bruise on her neck. Dyer got away from Stout's grasp and, after he left, she called the police.
While Stout was serving a 75-month sentence, the State petitioned to have him committed as a sexually violent predator under chapter 71.09 RCW. The State alleged that the burglary was sexually motivated, constituting a sexually violent offense.
*660 Stout has a lengthy criminal history, which includes both sexual and nonsexual offenses. On at least five occasions, Stout has engaged, or attempted to engage, in sexual acts with women without their consent.
During Stout's commitment trial, the State admitted evidence of these incidents, including facts surrounding his encounter with Karen Winters in 1982. Stout testified that he approached Winters outside of a bar and that they attempted to have sexual intercourse. At some point, police officers arrived and heard Winters yelling that she was being raped. When Winters emerged from the bushes, her face was swollen and her lip was bloody. Stout was charged with attempted rape, but a jury found him not guilty.
The State also entered evidence surrounding a 1990 conviction for third degree assault. Joan G., who is mildly retarded, testified that she met Stout when she went to his house with a friend and the friend's boyfriend. Joan G. allowed Stout to give her a ride back to her friend's house. On the way, Stout stopped the car and forced Joan G. to have sex with him, despite her saying "no," and attempting to push him away. Stout was originally charged with rape in the third degree, but the State amended the charge to the lesser crime of third degree assault in exchange for his Alford[1] plea.
Additionally, the State admitted evidence surrounding Stout's 1992 conviction for indecent liberties by forcible compulsion. Kimberly Orestad testified that she was driving home one night when Stout pulled his truck behind her vehicle and began flashing his lights. Orestad mistakenly thought she was being followed by someone she knew and pulled into the parking lot of a closed convenience store. Stout walked over to the driver's side door and offered Orestad money to feel her "pussy." Orestad said "no," and Stout grabbed her arm and threatened to break it. He also grabbed Orestad's breast. Orestad quickly backed her vehicle out of the parking space and escaped.[2]
After a nonjury commitment trial, the superior court concluded that the burglary for which Stout was incarcerated was sexually motivated, and that Stout is a sexually violent predator.

II.
Chapter 71.09 RCW is a civil statute that authorizes the State to involuntarily commit an individual to a secure treatment facility when he is found, after trial, to be a sexually violent predator.[3] To commit a person as a sexually violent predator, the State must prove that the individual: (1) has been convicted of or charged with a crime of sexual violence; (2) suffers from a mental abnormality or personality disorder; and (3) that the disorder makes him more likely than not to engage in predatory acts of sexual violence if not committed to a secure treatment facility.[4] The State must also show that the defendant's mental abnormality or personality disorder causes him to have serious difficulty controlling his dangerous behavior.[5] If an individual is not incarcerated for a sexually violent offense at the time a petition for commitment is filed, due process requires the State to prove that the individual committed a recent overt act of sexual violence.[6]

A. Sexually Violent Offense
Stout first contends that the State did not prove beyond a reasonable doubt that he was convicted of or charged with a sexually violent offense. He argues that the State was required to reprove that he committed burglary, in addition to proving beyond a reasonable *661 doubt that it was sexually motivated. This is a question of law, which we review de novo.[7]
The State was not required to reprove that Stout committed burglary. Under chapter 71.09 RCW, the State was only required to show that Stout was either "convicted of or charged with a crime of sexual violence."[8] Burglary in the first degree qualifies as a sexually violent offense if "either at the time of sentencing for the offense or subsequently during civil commitment proceedings ... [it] has been determined beyond a reasonable doubt to have been sexually motivated."[9]
Because Stout pleaded guilty to first degree burglary, the State did not establish sexual motivation at the sentencing hearing. Therefore, during the commitment proceeding, the State alleged, and the trial court found beyond a reasonable doubt, that the burglary was sexually motivated.[10] Thus, the State proved that Stout has been convicted of a crime of sexual violence. The State was not required to reprove he committed burglary. And because Stout was incarcerated for this offense at the time the petition was filed, the State was not required to prove a recent overt act.

B. Effective Assistance of Counsel
Next, Stout argues that his counsel was ineffective. Defendants have a statutory right to counsel at all stages of a commitment trial.[11] In In re Detention of Smith,[12] we applied the Strickland[13] analysis to determine whether counsel was effective for purposes of chapter 71.09 RCW.[14]
On review, there is a strong presumption that counsel was effective.[15] Under the Strickland test, the defendant must establish two things. First, he must show that his counsel's actions fell below an objective standard of reasonableness.[16] Second, he must establish that, but for his counsel's deficient assistance, a reasonable probability exists that the outcome would have been different.[17] An attorney's legitimate trial strategy or tactics cannot constitute ineffective assistance.[18]
Stout claims three bases for ineffective assistance of counsel. First, he argues that his attorney should have objected to the State's evidence of the 1982 rape charge because he was acquitted by a jury. He claims that the State was collaterally estopped from introducing evidence of the incident.
*662 The acquittal fails the first test for determining whether it collaterally estops the challenged evidence. Washington courts apply a four-part test to determine whether a litigated issue should be given collateral estoppel effect: "(1) the issue decided in the prior adjudication [must be] identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted [must have been] a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue [must] not work an injustice on the party against whom collateral estoppel is to be applied."[19]
The specific issue decided in the 1982 criminal trial was whether Stout attempted to rape Winters. In his commitment trial, the issue was whether he is a sexually violent predator. That determination is based on a number of factors, and the incident with Winters was relevant evidence, but far from conclusive. As the State points out, the superior court did not find that Stout attempted to rape Winters. Rather, it found that intercourse was attempted, and Winters' face was swollen and bloody when police arrived. This evidence is relevant to whether Stout is sexually abusive. Stout's attorney acted reasonably by not objecting to evidence surrounding the 1982 incident.
Stout also claims that his attorney should have objected to evidence of his convictions for nonsexual offenses. But, in fact, Stout's attorney did object to the relevance of a forgery conviction. The court overruled the objection after the State explained that the crime was relevant to Stout's antisocial personality disorder (APD) because people with APD typically have a pattern of criminal offenses.
Stout cites In re Personal Restraint of Young[20] for the proposition that nonsexual convictions are never relevant in a sexually violent predator trial. In Young, our Supreme Court stated that it did not "perceive any relevance" to the testimony about the defendant's conviction for a bomb threat because it was not a sexually motivated crime.[21] But the opinion does not elaborate on which relevancy bases the court considered.
Regardless, the issue here is not whether the trial court improperly admitted evidence, but whether Stout's attorney acted reasonably under the first prong of Strickland. His attorney objected once based on relevance, the State countered with valid proof of why the nonsexual offenses were relevant, and the court overruled the objection. It was reasonable for Stout's attorney not to object each time the State introduced evidence of a nonsexual offense because the outcome would likely have been the same.
Finally, Stout argues that his attorney erred by not moving to exclude the State's MnSOST-R results because his evidence showed that the results were unreliable. Because results from actuarial instruments, including the MnSOST-R, are routinely admitted as evidence concerning a defendant's recidivism risk in sexually violent predator proceedings, it was reasonable for Stout's attorney to not object to the State's evidence.[22] Even if the results were improperly admitted, Stout was not prejudiced. The State presented evidence of results from two other actuarial instruments, which indicated that he is at high risk to reoffend. In fact, while the MnSOST-R results only scored Stout in the category where 70 percent of offenders reoffend, the Static 99 results showed that he is in the highest category to reoffend, and the SORAG results placed him in "bin 9," where 100 percent of other offenders in the same category have reoffended.
Stout's attorney was not ineffective.

*663 C. Difficulty Controlling Behavior
Stout argues that the trial court erred by not entering a conclusion of law that he has serious difficulty controlling his behavior. Stout claims that a factual finding is not enough. Alternatively, Stout claims that the court's finding is not supported by sufficient evidence.
The requirement to show some proof that an individual lacks control stems from two United States Supreme Court cases: Kansas v. Crane[23] and Kansas v. Hendricks.[24] In these cases, the Court evaluated Kansas's sexually violent predator act, which parallels Washington's statute.[25] In Hendricks, the U.S. Supreme Court held that the statute satisfied due process because it requires a finding of dangerousness, then links that finding to the existence of a mental abnormality that makes it "difficult, if not impossible, for the person to control his dangerous behavior."[26] This ensures that involuntary confinement is limited to people who are dangerous beyond their control.[27] In Crane, the Court clarified the application of Hendricks, and held that there is no requirement of showing complete lack of control, but rather "there must be proof of serious difficulty in controlling behavior."[28]
In In re Detention of Thorell,[29] our Supreme Court interpreted Crane to determine whether lack of control is a necessary element of proving an individual is a sexually violent predator under chapter 71.09 RCW. The court held that lack of control is not a separate element, and therefore does not require a separate jury instruction.[30] Rather, the difficulty controlling behavior finding is part of proving a mental abnormality:

Crane requires linking an SVP's serious difficulty in controlling behavior to a mental abnormality, which together with a history of sexually predatory behavior, gives rise to a finding of future dangerousness, justifies civil commitment, and sufficiently distinguishes the SVP from the dangerous but typical criminal recidivist. It is the finding of this link, rather than an independent determination, that establishes the serious lack of control and thus meets the constitutional requirements for SVP commitment....[[31]]
Stout's contention that the court was required to enter a conclusion of law that he lacks volitional control is incorrect. Rather, the court was required to find beyond a reasonable doubt that Stout suffers from a mental abnormality that causes him serious difficulty controlling his behavior. It was then required to conclude, based on all of the necessary findings, that Stout is a sexually violent predator.
In considering whether there is sufficient evidence to support the superior court's finding, we view the evidence in the State's favor to determine whether a rational person could have found beyond a reasonable doubt that Stout suffers from a mental abnormality that causes him to have difficulty controlling his behavior.[32] "A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that the trier of fact could draw from the evidence."[33] We must defer to the trial court on the *664 credibility of expert witnesses and the persuasiveness of the evidence.[34]
The superior court found that Stout's mental disorder causes him difficulty controlling his behavior of engaging in sex with nonconsenting others. Dr. Packard testified that Stout suffers from APD and paraphilia. Paraphilia causes him to have recurring and intense sexually arousing fantasies involving nonconsenting others. This is a chronic and long-term condition. Dr. Packard also opined that Stout's personality disorder causes him difficulty in controlling his urges. He pointed to Stout's recurring offenses and his unresponsiveness to previous convictions and punishment as evidence of his lack of volitional control. Viewing the evidence in the State's favor, a rational person could conclude beyond a reasonable doubt that Stout's mental abnormality causes him serious difficulty in controlling his behavior.

D. The Trial Court's Finding that Stout Forced Joan G. to Have Sex
Finally, Stout challenges the superior court's finding that he forced Joan G. to have sex with him. He claims that it is not supported by sufficient evidence.
Joan G., a mildly retarded woman, testified that she did not want to have sex with Stout, she told him "no," and tried to push him away, but Stout continued to have intercourse with her. She testified that Stout threatened to kill her if she told anyone. In contrast, Stout testified that they had consensual sex. Yet, the State also entered evidence that Stout lied to the police when they first questioned him about the incident by claiming that he did not touch Joan G. The court found that Stout's version of events was "far less credible" than Joan G.'s. Viewing the evidence in the State's favor, and deferring to the trial court's judgment regarding witness credibility, a rational person could find beyond a reasonable doubt that Stout forced Joan G. to have sex with him.[35]
AFFIRMED.
KENNEDY and AGID, JJ., concur.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] Rachel Riggles testified to a similar incident in 1990. Stout pulled his truck behind her vehicle, flashed his lights, and when she pulled over, he offered her money for sex.
[3] RCW 71.09.010.
[4] RCW 71.09.020(16); In re Detention of Thorell, 149 Wash.2d 724, 742, 72 P.3d 708 (2003), cert. denied, 541 U.S. 990, 124 S.Ct. 2015, 158 L.Ed.2d 496 (2004).
[5] Thorell, 149 Wash.2d at 736, 72 P.3d 708.
[6] RCW 71.09.030(5); In re Personal Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993) (superceded by statute on other grounds).
[7] Diehl v. W. Wash. Growth Mgmt. Hearings Bd., 153 Wash.2d 207, 212, 103 P.3d 193 (2004).
[8] RCW 71.09.020(16) (defining "sexually violent predator").
[9] RCW 71.09.020(15). "`Sexual motivation' means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." RCW 9.94A.030(39).
[10] The State pled in the alternative, and argued that Stout's 1992 indecent liberties conviction could also serve as the predicate sexual offense. Because Stout had been released from prison since that offense, however, the State alleged that the burglary served as a recent overt act. But the trial court accepted the State's primary argument, and found that Stout's burglary conviction, for which he was serving a prison sentence, was a predicate offense because it was sexually motivated.
[11] RCW 71.09.050(1); In re Detention of Petersen, 138 Wash.2d 70, 92, 980 P.2d 1204 (1999). Stout contends that he has both a constitutional and statutory right to counsel. But our Supreme Court has held that a defendant has no Fifth or Sixth Amendment right to counsel during a sexually violent predator proceeding because it is a civil, rather than criminal, proceeding. Petersen, 138 Wash.2d at 91, 980 P.2d 1204.
[12] 117 Wash.App. 611, 72 P.3d 186 (2003).
[13] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[14] In re Detention of T.A.H.L., 123 Wash.App. 172, 178, 97 P.3d 767 (2004); Smith, 117 Wash. App. at 617-18, 72 P.3d 186.
[15] Smith, 117 Wash.App. at 617, 72 P.3d 186.
[16] Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052; State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987).
[17] Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Thomas, 109 Wash.2d at 226, 743 P.2d 816; Smith, 117 Wash.App. at 617, 72 P.3d 186.
[18] Smith, 117 Wash.App. at 617-18, 72 P.3d 186.
[19] Clark v. Baines, 150 Wash.2d 905, 913, 84 P.3d 245 (2004).
[20] 122 Wash.2d 1, 857 P.2d 989 (1993).
[21] Young, 122 Wash.2d at 54, 857 P.2d 989. The court held that there was no prejudice, however. Young, 122 Wash.2d at 54, 857 P.2d 989.
[22] Thorell, 149 Wash.2d at 753, 72 P.3d 708; In re Detention of Halgren, 124 Wash.App. 206, 219, 98 P.3d 1206 (2004).
[23] 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).
[24] 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).
[25] Kan. Stat. Ann. § 59-29a01 (1994).
[26] Hendricks, 521 U.S. at 358, 117 S.Ct. 2072.
[27] Hendricks, 521 U.S. at 358, 117 S.Ct. 2072.
[28] Crane, 534 U.S. at 413, 122 S.Ct. 867.
[29] 149 Wash.2d 724, 742, 72 P.3d 708 (2003), cert. denied, 541 U.S. 990, 124 S.Ct. 2015, 158 L.Ed.2d 496 (2004).
[30] Thorell, 149 Wash.2d at 736, 72 P.3d 708.
[31] Thorell, 149 Wash.2d at 736, 72 P.3d 708 (interpreting Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), and Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).
[32] Thorell, 149 Wash.2d at 744-45, 72 P.3d 708.
[33] State v. Bonisisio, 92 Wash.App. 783, 794, 964 P.2d 1222 (1998).
[34] Bonisisio, 92 Wash.App. at 794, 964 P.2d 1222.
[35] Stout also claims that the trial court did not find that he is a sexually violent predator beyond a reasonable doubt because the court did not mention the standard of proof it applied in its written findings of fact and conclusions of law. But the court indicated in a memorandum decision that the State met its burden of proof beyond a reasonable doubt. Because the court's memorandum order was the functional equivalent of an oral ruling, we rely on it to confirm that the trial court applied the correct standard of proof. See Knecht v. Marzano, 65 Wash.2d 290, 292, 396 P.2d 782 (1964) and Gestson v. Scott, 116 Wash.App. 616, 620, 67 P.3d 496 (2003) (holding that when the trial court's order omits an issue, a reviewing court can look to its oral decision).