[No. 61551-9. En Banc. September 22, 1994.]

*In the Matter of the Detention of* J.S., ET AL.

ROSENDO VILLANUEVA, ET AL, *Appellants*, v. J.S., ET AL, *Respondents*.

*Christine O. Gregoire, Attorney General,* and *Sara J. Finlay* and *Christopher Jennings, Assistants,* for appellants.

*John A. McNeish* of *Department of Assigned Counsel,* for respondents.

*Larry A. Jones* on behalf of The ARC of Washington State, amicus curiae for respondents.

DOLLIVER, J. — This appeal represents three consolidated civil commitment cases involving the involuntary treatment of developmentally disabled adults. The State seeks reversal of the trial court's orders, which required the Respondents to be placed in less restrictive treatment despite the State's contention that such placements were not available. At issue is the extent to which treatment decisions lie within the discretion of the Department of Social and Health Services (DSHS) and, similarly, the extent to which the court has authority to order less restrictive treatment for those detained under the involuntary treatment provisions of RCW 71.05.

## THE CASE REGARDING B.H.

B.H. suffers from an autistic disorder as well as mental retardation and has lived in residential facilities since the age of 9. Her current hospitalization at Western State occurred because she became unmanageable while placed in a DSHS division of developmental disabilities (DDD) intensive support home in 1991.

On June 1, 1992, commissioner Paul Boyle, acting on a petition for recommitment under RCW 71.05.320(2), found that B.H. continued to be "gravely disabled" and ordered 180 days' involuntary treatment at Western State. Commissioner Boyle, however, set a date, June 29, 1992, for oral review of the order pending a possible DDD placement for B.H. The oral review date was set back throughout the summer as DDD placement opportunities were sought. The review hearing was ultimately held on October 12, 1992, before commissioner James Marshall who, incidentally, presided over each of the cases consolidated in this appeal.

Testimony was offered by all the primary members of B.H.'s treatment team at Western State: her psychiatrist, Dr. Carroll Gray; her clinical psychologist, Dr. Joe Burnett; her psychiatric social worker, Ms. Sandra Moore. They each testified that B.H. could be served better by treatment at a facility more suited to her needs than Western State. But they also recommended continued treatment at Western State.

Ms. Ann Miklusis, a DDD case resource manager, also testified regarding her efforts to arrange a placement for B.H. at Rainier School. A placement at Rainier School was not available, and, furthermore, the DSHS Secretary had stated that no financial resources were available to create an intensive tenant support (ITS) program specifically to serve B.H. Ms. Miklusis opined that given the lack of available alternatives, treatment in Western State would be the most appropriate.

The court expressed frustration at the DSHS Secretary's blanket decision to deny Western State patients access to DDD facilities. The court ordered the State of Washington to place B.H. in an appropriate facility. The court also imposed a fine of $500 per day each day B.H. was not placed in a "DDD institution, ITS or equivalent placement using mental health or DDD funds or whatever state resources are necessary".

### THE CASE REGARDING J.S.

J.S. is a 67-year-old male who has been institutionalized since he was 8 or 9 years old. For a significant period of his life, J.S. resided at the Rainier School. J.S. suffers from mental disorders including Axis I anxiety disorder and Axis II mild mental retardation.

Immediately prior to the events giving rise to this appeal, J.S. had been detained at Western State Hospital for 180 days' involuntary treatment pursuant to a March 1992 court order. In September 1992, a petition was filed on behalf of DSHS seeking 180 days' further involuntary treatment at Western State under RCW 71.05.320(2). While it is undisputed J.S. could receive more appropriate treatment at a facility other than Western State, his doctors recom-

mended that J.S. remain at Western State due to the unavailability of an alternative placement.

At his hearing on September 28, 1992, Dr. Mayers, J.S.'s treating psychologist, testified her ultimate preference would be that J.S. be placed in a DSHS DDD residential facility, but she also testified J.S. was receiving adequate care and treatment at Western State and recommended he continue to be detained there. The trial court, however, found that less restrictive treatment would be in J.S.'s best interests and ordered him placed at the Rainier School until an available permanent placement could be found. As in the case regarding C.P., the trial court also ordered fines and sanctions of $500 per day for the State's noncompliance.

## THE CASE REGARDING C.P.

C.P., a 25-year-old male, has had a history of mental health treatment since childhood. He was admitted to Western State in August 1991 after exhibiting threatening behavior where he had previously been residing. When a petition to renew C.P.'s involuntary detention was denied in early June, C.P. elected to remain at Western State voluntarily. However, when C.P. changed his mind and decided that he did not want to remain at Western State after all, C.P. was involuntarily committed for 90 days on June 25, 1992.

Before C.P.'s 90-day detention period expired, C.P.'s physician and psychologist petitioned for a new 180-day involuntary treatment period under RCW 71.05.320(2) on the grounds that C.P. was dangerous to himself and others and was gravely disabled. Although they recommended treatment at Western State, C.P.'s doctors admitted that C.P. could probably be better served elsewhere. The trial court agreed and ordered less restrictive treatment for C.P., but also ordered that he remain at Western State pending the hearing of this case.

In summary, each of the cases in this appeal involves individuals who were detained at Western State Hospital. Because they suffered primarily from mental retardation, the trial court found less restrictive treatment was in their

best interests and ordered the State to place the Respondents in less restrictive treatment. In two of the cases, the court ordered fines and sanctions of $500 per day for as long as the State did not comply with the orders and the Respondents were not transferred to appropriate placements. Because all three cases present virtually identical issues of law on similar facts, they were consolidated for purposes of appeal. We review this case on certification from Division Two of the Court of Appeals.

## I

Because familiarity with the general terms of Washington's involuntary treatment act is important, we begin by reviewing the relevant provisions of RCW 71.05.

When an individual is initially detained involuntarily for evaluation and treatment in a facility under RCW 71.05, the individual must be examined within 24 hours. RCW 71.05.210. The individual may not be detained for more than 72 hours unless such detention is the result of a probable cause hearing pursuant to RCW 71.05.200(1)(a). At the probable cause hearing, the individual may be ordered to undergo 14 days of intensive treatment or up to 90 days of less restrictive treatment, depending on what the petitioners seek and what the court determines is in the best interests of the individual or others. RCW 71.05.230, .240. At this stage, the statute incorporates several requirements, including that, if less restrictive treatment is ordered, the facility designated to provide the treatment has agreed to assume the responsibility. RCW 71.05.230(9). The court presiding over the probable cause hearing, however, has the authority to determine what is in the best interests of the individual and order treatment accordingly.

Beyond the 14-day period of intensive inpatient treatment, an individual may not be detained unless a petition for an additional period of confinement is filed by a designated professional involved in the detention. The petition must be accompanied by affidavits which explain what, if any, less restrictive treatment alternatives are available to

the individual. At this point, for the first time, the individual has the right to a full hearing or a jury trial. RCW 71.05.240, .310. Subsection (1) of RCW 71.05.320 lists the options available to a court presiding over this hearing and considering the possibility of less restrictive treatment alternatives:

> If the court or jury finds that grounds set forth in RCW 71.05.280 have been proven and that the best interests of the person or others *will not be served by a less restrictive treatment* which is an alternative to detention, the court shall remand him or her to the custody of the department of social and health services or to a facility certified for ninety day treatment by the department of social and health services for a further period of intensive treatment not to exceed ninety days . . ..
>
> If[, however,] the court or jury finds that grounds set forth in RCW 71.05.280 have been proven, but finds that treatment less restrictive than detention *will be in the best interest of the person or others*, then the court shall remand him to the custody of the department of social and health services or to a facility certified for ninety day treatment or to a less restrictive alternative for a further period of less restrictive treatment not to exceed ninety days . . ..

(Italics ours.)

Subsection (2) of RCW 71.05.320 governs what happens next, whether it is release or continued involuntary treatment:

> Said person shall be released from involuntary treatment at the expiration of the period of commitment imposed under subsection (1) . . . unless [the designated professional] files a new petition for involuntary treatment on the grounds that the committed person;
>
> (a) [Is dangerous to others]; or
>
> . . . .
>
> (d) Continues to be gravely disabled.
>
> . . . .
>
> . . . [I]f the court or jury finds that the grounds for additional confinement as set forth in this subsection are present, the court may order the committed person returned for an additional period of treatment not to exceed one hundred eighty days . . .. Successive one hundred eighty day commitments are permissible on the same grounds . . . as the original one hundred eighty day commitment. . . .

It should be pointed out that the hearings at issue in this case were held pursuant to petitions filed under RCW 71.05-

.320(2) seeking additional periods of commitment for the Respondents. Each of the Respondents had previously been committed for 90-day intensive treatment at Western State under RCW 71.05.320(1). In each of the cases the court found that grounds for additional confinement were present, namely that each Respondent continued to be "gravely disabled". The Commissioner, however, found that a treatment change would be in the best interests of the Respondents and ordered they be placed in less restrictive treatment for 180 days.

The State does not argue that the trial court lacks the authority to consider less restrictive treatment at the 180-day hearing. Instead, the State argues the court exceeded its authority by ordering specific treatment. In support of this argument, the State cites cases in which we have reversed orders of specific placement in juvenile delinquency, juvenile dependency, and alternative residential placement cases on the grounds that the statutes did not grant specific placement powers to the courts. *See In re Eaton*, 110 Wn.2d 892, 899, 757 P.2d 961 (1988); *In re Lowe*, 89 Wn.2d 824, 827, 576 P.2d 65 (1978). *See also In re Gakin*, 22 Wn. App. 822, 592 P.2d 670 (1979). We do not find these cases persuasive under the facts of the cases consolidated in this appeal, nor do we find the statutes in these cases to be sufficiently analogous to RCW 71.05.320.

With one small exception, the orders in the present case do not require placement at a specific facility. They merely reflect the court's intention that the Respondents be removed from intensive treatment at Western State Hospital. For example, in the case of B.H., the court ordered "[a]ppropriate placement outside of the Hospital in DDD institution, ,ITS [Intensive Tenant Support] or equivalent placement . . .." Meanwhile C.P. was ordered to remain at Western State. The court ordered that J.S. be placed in "[l]ess restrictive [treatment] to Rainier School or appropriate Intensive Tenant Support (ITS) program or equivalent". In the case of C.P., less restrictive treatment was to be arranged at a later time pending hearing. The most specific

placement ordered by the court was that J.S. be held at Rainier School during the time that his permanent placement was arranged, apparently because the court felt it imperative to remove J.S. from the hospital setting.

 More significantly, RCW 71.05 does not limit the court's authority to the extent it is expressly limited in other contexts by the statutory schemes interpreted in the cases cited above. As the Respondents point out, the court presiding over an involuntary commitment proceeding also has a duty under MPR 1.4 to order specific treatment:

> (a) As an alternative to detention, where the court makes a finding or a special verdict is returned that the respondent should receive less restrictive alternative treatment, the court may order such less restrictive alternative treatment for no longer than the period for which the respondent could have been committed at the hearing.

> (b) If the court orders less restrictive alternative treatment, the order shall specify the terms and conditions of the alternative treatment and a copy shall be delivered to the respondent.

For most purposes, court rules and statutes are treated identically. *In re Cross*, 99 Wn.2d 373, 380-81, 662 P.2d 828 (1983). Under this provision, the court's orders for the most part do not appear to be improper.

Therefore, with the exception of the portion of the order in J.S.'s case, which required the State to transfer J.S. to the Rainier School until his permanent placement could be arranged, we do not find the orders to be too specific.

The State also argues that the court has exceeded its authority under the statute by ordering less restrictive treatment for the Respondents when no such placement was available. The State essentially contends that the court's power is statutorily limited. Drawing from the framework of the relevant provisions, the State assumes the provisions of subsection (1) are necessarily incorporated into subsection (2) because subsection (2) requires that a 180-day hearing be subject to all the same procedural safeguards as a 90-day hearing. *See* RCW 71.05.310; Br. of Appellants, at 18. The State thus contends that in a 180-day hearing the court has three options when it determines that less restrictive treat-

ment is in the best interests of the individual: (1) remand to the custody of DSHS, (2) remand to a facility certified for 90-day treatment, or (3) remand to a less restrictive alternative. *See* RCW 71.05.320(1).

When we read the statute as a whole, however, we do not view this as a limitation of the court's authority to order less restrictive treatment. To the contrary, this provision expressly grants the court the power to order less restrictive treatment instead of remanding to the custody of DSHS if less restrictive treatment is in the best interests of the individuals as the court found in the present cases. Furthermore, the Legislature has clearly foreseen the need for a possible treatment change after successive periods of treatment, and has developed the procedural mechanism for the cases to be periodically reevaluated.

The Legislature has emphasized the importance of less restrictive treatment and has, in fact, directed the court to consider less restrictive treatment at each stage of involuntary commitment proceedings. Restricting the court's ability to order less restrictive treatment would not be consistent with this clear legislative intent.

The State further argues that because the specific placements ordered by the court were not actually available to the Respondents, they could not qualify as "less restrictive alternatives" under the statute. The State maintains the court may only order alternative less restrictive treatment when such treatment is otherwise available. This argument has little appeal, and it is not supported by citation to authority. The State highlights language from other provisions of RCW 71.05 that allow outpatient treatment only if the facility has agreed to assume the responsibility. *See* RCW 71.05.230(9). These provisions, however, do not apply directly to the type of treatment or to the hearings at issue in this case.

The State finally argues the court has improperly ordered it to incur expenditures beyond its appropriation by essentially creating new services for the Respondents. The State maintains the trial court is attempting to modify

policy choices made at the legislative level. This argument, however, is misplaced. The Legislature has granted the court the power to determine the best interests of the individual and in so doing, to consider less restrictive treatment. The statutory framework represents a legislative policy choice to create this role for the court. We find that because the court has the power under the statute to order less restrictive treatment, it necessarily has the power to compel compliance with its order.

▮▮ We do agree, however, that the $500-per-day fines and sanctions ordered by the court in the cases of J.S. and B.H. were unwarranted. When deciding whether contempt fines and sanctions are warranted in a particular case, the correct standard is abuse of discretion. *Schuster v. Schuster*, 90 Wn.2d 626, 630, 585 P.2d 130 (1978). In anticipation of the State's noncompliance with the less restrictive orders, the court ordered the fines and sanctions to begin the very day it ordered the less restrictive placements without giving the State a reasonable amount of time to find suitable placements for J.S. and B.H. While this alone may have been determinative, we also note that the State appears to have been acting in good faith and that it quickly pursued the proper appeals rather than simply ignoring the court's order. We find this, together with the court's failure to allow a reasonable time for compliance before implementing the fines, constitutes an abuse of discretion.

## II

Although we have determined the Respondents are entitled to be placed in less restrictive treatment pursuant to the court's orders, we do not agree that such less restrictive treatment is constitutionally or statutorily required as Respondents argue.

▮▮ In *Youngberg v. Romeo*, 457 U.S. 307, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982), the United States Supreme Court considered the substantive liberty interests in adequate treatment of an involuntarily committed mentally retarded person. The Court held that confinement is only violative of

due process if it is not based on professional judgment. *Youngberg*, 457 U.S. at 323. Federal courts applying *Youngberg* have found there is no entitlement to community placement or to treatment in the least restrictive environment under the federal constitution. *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1248 (2d Cir. 1984). Furthermore, federal courts have held that mentally retarded individuals who have been denied community placement and instead placed in an institution are not denied substantive due process of liberty if their treatment decisions were based on professional judgment. *Phillips v. Thompson*, 715 F.2d 365, 368 (7th Cir. 1983); *S.H. v. Edwards*, 860 F.2d 1045, 1051 (11th Cir. 1988). In determining whether professional judgment has been exercised:

> A reasonable consideration must necessarily incorporate a cost analysis. A professional determination that excludes all considerations of costs and available resources could easily become impossible for a state to implement within justifiable budgetary limitations.

*Jackson v. Fort Stanton Hosp. & Training Sch.*, 964 F.2d 980, 992 (10th Cir. 1992). Our duty is to ensure that an individual's treatment does not fall below that required by due process, but

> [a]bove that constitutional threshold may exist many constitutionally acceptable alternatives from which the state may legitimately choose. Inevitably, some of these alternatives may take into account the availability of treatment options or indeed the resources necessary to supply some of these options.

*Jackson*, 964 F.2d at 992.

Thus, the constitutionally significant issue is not whether the optimal course of treatment must be followed, but whether a course of treatment is adequate and reasonably based on professional judgment. In each of the cases on appeal here, the testifying medical professionals found that the Respondents could be better cared for in a less restrictive setting but nonetheless recommended continued treatment in Western State would be appropriate for each of the Respondents given their conditions, their need for treatment, and the unavailability of less restrictive alternatives.

Because continued treatment at Western State would have been amply supported by professional judgment reflected in the record through testimony that such treatment would be adequate and appropriate, we find the Respondents are not constitutionally entitled to less restrictive treatment.

 We also note that the Respondents in this case do not have a statutorily guaranteed right under RCW 71.05 to less restrictive treatment. Although they cite RCW 71.05.360(2), which states that individuals involuntarily detained "shall have the right to adequate care and individualized treatment", they fail to demonstrate that the care at Western State is not adequate. RCW 71.05 guarantees that less restrictive treatment for involuntarily detained individuals will be considered, but it does not expressly grant them a right to less restrictive treatment.

The Respondents rely on a passing statement made in *Cross* that the civil commitment statute "does not make less restrictive treatment discretionary, but *requires* it whenever the trier of fact finds that such treatment 'will be in the best interest of the [detainee] or others'. RCW 71.05.320(1)." *In re Cross*, 99 Wn.2d at 381. This statement, however, is not altogether consistent with the provision it construes. RCW 71.05.320(1) uses mandatory language (the court "shall"), but gives the court three options, to remand the individual to the custody of DSHS, to a certified facility, *or* to a less restrictive alternative. Thus, the court is not required under this provision to order the less restrictive alternative. This is also consistent with the discretionary language of MPR 1.4(a) which states that the court "*may* order such less restrictive . . . treatment" as an alternative to detention when the court makes a finding that the respondent should receive less restrictive treatment. (Italics ours.)

 Certainly RCW 71.05 expresses a public policy goal that treatment be offered in the least restrictive setting reasonably available. But to construe the statute to mandate less restrictive treatment options regardless of their existence or availability would be a strained interpretation, which is to be avoided. *See In re Swanson*, 115 Wn.2d 21, 29,

804 P.2d 1 (1990); *In re LaBelle*, 107 Wn.2d 196, 205, 728 P.2d 138 (1986).

Finally, amicus curiae contends that community placement for the Respondents is required under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.* The parties, however, have not raised this issue either to the trial court or in their briefs to this court. We do not generally consider issues raised first and only by amicus. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 827, 854 P.2d 1072 (1993) (declining to address a claimed violation of the Federal Fair Housing Act); *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984). We, therefore, elect not to analyze the issues in this case under the ADA, noting that the nature of the ADA claim and the potential magnitude of the effects a ruling based on the ADA might have on involuntary treatment of the developmentally disabled convince us it would be prudent to wait until the issue is more fully presented.

We affirm in part, reverse in part, and remand all three cases for any further proceedings that may be necessary under this ruling.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied November 8, 1994.