# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of    )    No. 83490-8-I
    )
T.J.,    )    DIVISION ONE
    )
        Appellant.    )    UNPUBLISHED OPINION
    )

MANN, C.J. — T.J. appeals the trial court's findings, conclusions, and order committing him for 180 days of involuntary treatment. T.J. argues that the trial court erred in finding that he presented a substantial likelihood of repeating similar acts under RCW 71.05.280(3)(b), as well as finding that less restrictive alternatives to involuntary detention are not in the best interest of T.J. and others. We affirm.

## FACTS

T.J. was charged with attempted assault in the first degree. On May 14, 2019, the charge was dismissed due to T.J.'s incompetency to stand trial. On August 28, 2020, doctors at Western State Hospital petitioned for T.J.'s commitment on the grounds that he was gravely disabled and that, as a result of his behavioral health disorder, he continued to present a substantial likelihood of repeating similar felony acts as the attempted assault in the first degree. The doctors further petitioned that T.J. was not ready for a less restrictive placement.

Citations and pin cites are based on the Westlaw online version of the cited material.

The court held a probable cause hearing, where Western State Hospital's Dr. Bradley Antoniadis, T.J.'s treating psychiatrist Dr. Grzegorz Longawa, T.J.'s expert Dr. Michael Stanfill, and T.J. testified. The trial court found that T.J. had committed acts constituting a violent felony, but that he was not substantially likely to commit similar acts. The court also found that T.J. was gravely disabled under RCW 71.05.020(24), and that less restrictive alternatives to involuntary detention were not in the best interest of T.J. and others.

T.J. appeals.

## ANALYSIS

### A. Repeating Similar Acts

T.J. first argues that the State failed to prove that there was a substantial likelihood of repeated acts similar to the charged criminal behavior as required for involuntary commitment under RCW 71.05.280(3).[1] Because T.J. misreads the record, we disagree.[2]

Contrary to T.J.'s argument, the trial court found that "[T.J.] does NOT present a substantial likelihood of repeating similar acts based upon the evidence and testimony presented." Instead, the trial court based T.J.'s involuntary commitment under RCW

---

[1] RCW 71.05.280 provides:

> At the expiration of the fourteen-day period of intensive treatment, a person may be committed for further treatment pursuant to RCW 71.05.320 if:
>
> . . . .
> (3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts.

[2] Although the 180 days on the underlying petition have expired, we have previously held that the appeal of an involuntary commitment order is not moot because the order may have adverse consequences on future involuntary commitment determinations. In re Det. of M.K., 168 Wn. App. 621, 625, 279 P.3d 897 (2012).

71.05.280(4) after finding and concluding that he "is/continues to be gravely disabled" and

> [a]s a result of a behavioral health disorder manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such care as is essential for health and safety.

T.J. explicitly states that he does not challenge this finding on appeal. Unchallenged findings of fact are treated as verities on appeal. State v. Stenson, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997). T.J.'s argument that the State failed to prove he was likely to commit a similar act fails.

B. Less Restrictive Alternatives

T.J. next contends that the trial court erred in finding that less restrictive alternatives to involuntary detention are not in the best interest of T.J. and others.[3] We disagree.

RCW 71.05.320(1) provides that if the trial court finds a person to be gravely disabled, it also must determine "that the best interests of the person or others will not be served by a less restrictive treatment which is an alternative to detention" before ordering involuntary commitment. The statute empowers the trial court "to determine the best interests of the individual and in so doing, to consider less restrictive treatment." In re Det. of J.S., 124 Wn.2d 689, 699, 880 P.2d 976 (1994). The State has the burden of proving that a less restrictive alternative is not in the best interests of the

---

[3] T.J. argues that RCW 71.05.320(6)(a)(i) compels his placement in a less restrictive alternative. This provision, however, requires that the trial court have "previously made an affirmative special finding under RCW 71.05.280(3)(b)." RCW 71.05.320(6)(a)(i). As we have noted, the trial court did not make an affirmative finding under RCW 71.05.280(3)(b), so the statute is not applicable. Moreover, as the State correctly points out, RCW 71.05.320(6)(a)(i) was enacted in 2021 as part of section two of Engrossed Second Substitute Bill 5071 which had an effective date of July 25, 2021—four months after T.J.'s commitment hearing.

person to be committed.  In re Det. of T.A.H.-L., 123 Wn. App. 172, 186, 97 P.3d 767 (2004).[4]

We review a trial court's finding that less restrictive alternatives to involuntary detention are not in the best interest of T.J. and others for substantial evidence.  In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).  Substantial evidence is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise."  In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998).  We "defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony."  In re Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Here, there exists substantial evidence to support the trial court's finding.  At the commitment hearing, Dr. Antoniadis testified that T.J. suffers from schizophrenia resulting in hallucinations that he responds to, exhibits cognitive interference, self isolates, and responds to internal stimuli.  Dr. Antoniadis explained that T.J.'s auditory hallucinations are command in nature and, because they cause him fear, T.J. responds to them.  For example, the hallucinations might command T.J. to not shower or to stab people.  Dr. Antoniadis ultimately suggested that T.J. not receive a less restrictive placement, as he was still exhibiting severe symptoms, he was not stable on his medications, and there was no other less restrictive setting to meet his needs.

Dr. Longawa also testified that T.J. should not receive a less restrictive placement.  At the time of testimony, doctors were adjusting T.J.'s medications in an effort to stabilize his condition while also minimizing side effects.  When altering

---

[4] Although "RCW 71.05 guarantees that less restrictive treatment for involuntarily detained individuals will be considered, . . . it does not expressly grant them a [statutory] right to less restrictive treatment."  J.S., 124 Wn.2d at 701.  Furthermore, a person is not entitled to treatment in a less restrictive setting when continued treatment is "amply supported by professional judgment."  J.S., 124 Wn.2d at 701.

dosages, Dr. Longawa testified that T.J. began experiencing auditory hallucinations commanding him to take his own life. Dr. Longawa explained that this adjustment was a slow process, and that a community medical provider could not properly monitor such a complex situation; the risks involved in medication adjustment were too significant for a community placement.

The petitioning doctors presented substantial evidence showing that T.J. was not stable on his medications and was experiencing acute symptoms of schizophrenia. This evidence supports the trial court's finding that less restrictive alternatives to involuntary detention were not in the best interest of T.J. and others.

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____          _____
Coburn, J.