# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 59482-0-II |
| D.W., | |
| | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – DW appeals the superior court's order extending his involuntary civil commitment for an additional 180 days based on a finding that he was gravely disabled. He argues that substantial evidence does not support the superior court's gravely disabled finding. We hold that the evidence is sufficient to establish that DW was gravely disabled under RCW 71.05.020(25)(b). Therefore, we affirm the superior court's involuntary commitment order.

FACTS

*Background*

DW, who suffers from schizoaffective and anxiety disorders, was charged with second degree assault – domestic violence. After attempts to restore DW's competency failed, the felony charges were dismissed without prejudice and DW was involuntarily committed to Western State Hospital (WSH) for further evaluation.

WSH staff filed a petition for 180 days of involuntary treatment. In December 2023, the trial court found that DW was gravely disabled and, as a result of his behavioral health disorder,

experienced deterioration in routine functioning and was not receiving the care necessary for his health and safety. The trial court ordered up to 90 days of inpatient treatment. In January 2024, DW was discharged from WSH and transferred to Olympic Heritage Behavioral Health (Olympic). In February, DW was transferred from Olympic back to WSH.

In March 2024, Prakash Shet, M.D., and Nicholas McLain, PhD., filed a petition to extend the December 2023 involuntary commitment for an additional 180 days. They alleged that DW continued to be gravely disabled.

On March 21, the petition proceeded to a hearing before a superior court commissioner. McLain and DW testified.

*McLain's Testimony*

McLain testified that DW had been diagnosed with unspecified schizophrenia spectrum or other psychotic disorder and substance use disorder. In 2019, DW received outpatient treatment through Columbia River Mental Health Services (Columbia) for his schizophrenia disorder and for substance abuse. And DW had been admitted to WSH once for treatment related to the instant case.

McLain conducted a mental status exam of DW on March 1, 2024. During the exam, DW admitted that he still was hearing voices and seeing things. Specifically, DW stated that he had experiences where people turn into ghosts and vampires. McLain testified that DW was delusional. DW told McLain that he was a confidential informant for the police and the CIA. DW also told McLain that he helped get drugs off the streets, and because of that the police or the CIA owed him $100,000.

McLain reviewed DW's records and testified that these records showed that DW displays disorganized thinking and delusions.

McLain testified that DW admitted to having substance abuse problems. DW admitted to McLain that he had used crystal methamphetamine and heroin when he was not in the hospital. McLain stated that there was a high likelihood that DW would return to substance abuse if he were to be released from WSH.

Given DW's history with delusions and hallucinations, McLain believed DW would not be able to track time and keep appointments with a psychiatrist, fill his medications, or take them at the prescribed time. McLain recalled that, when DW was at Olympic, staff found DW had a pill that he should have taken at an earlier time. The Olympic staff were worried that DW was not taking all of his pills as prescribed at the hospital. After this incident, the staff instituted a medication watch to ensure DW took all of his pills. McLain testified that he believes DW's failure to take all of his medication as prescribed could explain why he still was hearing voices, seeing hallucinations, and experiencing delusions. McLain stated that together, DW's unspecified schizophrenia and substance abuse disorders impaired his judgment.

McLain testified that, in his professional opinion, he did not believe DW consistently would be able to ensure that his basic health and safety needs were met. He also testified that there was a high likelihood that, without stable housing and access to good drug and alcohol treatment, there was a high chance that DW would use drugs if released.

Regarding a less restrictive alternative, McLain testified that he did not believe that DW was ready for discharge. He cited to DW's disorganized delusional behavior, the incident of the hidden pill, and the fact that DW is on medication watch. McLain also referenced incidents in which DW had attempted to escape the facility and had to be placed in restraints.

McLain concluded that DW was gravely disabled as a result of his unspecified schizophrenia and substance use disorder.

*DW's Testimony*

DW testified that he had a plan to ensure that he continued to take his anti-psychotic medication. He said that his psychiatrist from Columbia could take over his medication schedule. DW said that if he were released from WSH he would live in Battle Ground and that he would contact his social worker to apply for social security insurance for income. DW also testified that he has a therapist at Columbia that he would use for other mental health services.

*Commissioner's Decision and Denial of Motion to Revise*

The commissioner noted that while DW testified that he had a plan to follow through with his treatment, take his medications, and had a place to go, the commissioner was concerned about DW's history of substance abuse and encounters with law enforcement. The commissioner stated, "It's a close call" and "I could justify, I think either decision I make." Clerk's Papers at 125. But based on the testimony, the commissioner concluded that DW continued to be gravely disabled under RCW 71.05.020(25)(b) and that DW was not ready for a less restrictive alternative. DW moved to revise the commissioner's decision. The superior court denied the motion to revise.

DW appeals the superior court's involuntary commitment order.

ANALYSIS

A.    STANDARD OF REVIEW

When the superior court decides a motion to revise an order granting a petition for involuntary treatment, we review de novo the superior court's decision, not the commissioner's decision. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). But we review the superior court's decision " 'based on the evidence and issues presented to the commissioner.' " *Id.* (quoting *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App. 2d 815, 829, 460 P.3d 667

(2020)). The commissioner's findings and orders, if not successfully revised, become the orders and findings of the superior court. *L.K.*, 14 Wn. App. 2d at 550.

When reviewing a superior court's decision on involuntary commitment for sufficient evidence, we consider whether substantial evidence supports the court's findings of fact and whether those findings of fact support the conclusions of law and judgment. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021). We "view the evidence in the light most favorable to the petitioner," and we do not disturb decisions "regarding witness credibility or the persuasiveness of the evidence." *Id*.

B.     LEGAL PRINCIPLES

RCW 71.05.320(4) states that the person in charge of the facility in which a person is committed may file a new petition for involuntary treatment on various grounds. Relevant here, a person may be involuntarily recommitted for up to an additional 180 days if he or she continues to be gravely disabled. RCW 71.05.320(4)(d).

RCW 71.05.020(25) defines "gravely disabled" as a condition in which a person, due to a behavioral health disorder,

> (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

The superior court found DW gravely disabled under RCW 71.05.020(25)(b).

In a civil commitment proceeding, the State has the burden of proving that a person is gravely disabled or presents a likelihood of serious harm by clear, cogent, and convincing evidence. RCW 71.05.310. This standard means that the State must show that the ultimate fact in issue is "highly probable." *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

When a petitioner seeks to prove that a person is gravely disabled under RCW 71.05.020(25)(b), they must show (1) "recent proof of significant loss of cognitive or volitional control" and (2) "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for [their] health or safety." *LaBelle*, 107 Wn.2d at 208. The second requirement may include a showing that "the individual is unable, because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *Id*. (emphasis omitted). Under this framework, the State can intervene before a mentally ill person decompensates and can provide a continuity of care. *A.F.*, 20 Wn. App. 2d at 127.

RCW 71.05.320(1)(a) provides that, if the trial court finds a person to be gravely disabled, it also must determine "that the best interests of the person or others will not be served by a less restrictive treatment which is an alternative to detention" before ordering involuntary commitment. The statute empowers the trial court "to determine the best interests of the individual and in so doing, to consider less restrictive treatment." *In re Det. of J.S.*, 124 Wn.2d 689, 699, 880 P.2d 976 (1994). The State has the burden of proving that a less restrictive alternative is not in the best interests of the person to be committed. *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 186, 97 P.3d 767 (2004).

C.    SUFFICIENCY OF THE EVIDENCE

DW argues that substantial evidence did not support the gravely disabled finding under RCW 71.05.020(25)(b). We disagree.

DW's testimony could suggest that he would have access to shelter and other resources and that he intended to continue treatment if he was released. But we must examine all of the

evidence, not just DW's testimony. And we must view the evidence in the light most favorable to the petitioners when examining the sufficiency of the evidence. *A.F.*, 20 Wn. App. 2d at 125.

McLain's testimony established that despite expressing some awareness of his condition and being compliant with his treatment at WSH, DW continued to experience hallucinations, delusions, visions, and disorganized thinking. Specifically, DW still was hearing voices and seeing things, and he had delusions that he was a confidential informant for the CIA. McLain also testified that perhaps DW was not taking his medication as prescribed, which could explain why he continued to suffer symptoms of schizophrenia. Viewing the evidence in the light most favorable to the petitioners, this evidence supports the finding by clear, cogent, and convincing evidence that DW experienced "recent proof of significant loss of cognitive or volitional control." *LaBelle*, 107 Wn.2d at 208.

In addition, McLain testified that, in his professional opinion, he did not believe DW consistently would be able to ensure that his basic health and safety needs were met. McLain believed DW would not be able to track time and keep appointments with a psychiatrist, fill his medications, or take them at the prescribed time. McClain also testified that there was a high likelihood that, without stable housing and access to good drug and alcohol treatment, DW would abuse drugs if released. Viewing the evidence in the light most favorable to the petitioners, this evidence is sufficient to support a finding by clear, cogent, and convincing evidence that DW would not receive such care as is essential for his health or safety if released.

DW challenges McLain's reliance on notes from Olympic staff, especially regarding the incident with the pill. But DW cites to no authority to support the claim that McLain could not not rely on notes from Olympic when he formed his expert opinion.

DW also argues that there was insufficient evidence of recent, severe deterioration because he had suffered delusions for years. But the State may intervene before a mentally ill person decompensates. *A.F.*, 20 Wn. App. 2d at 127. McLain testified that during the mental exam just 20 days before the hearing, DW told him that he was seeing ghosts and vampires and suffering delusions. And while DW may have suffered delusions for years, he also was experiencing hallucinations. Coupled with the delusions that DW discussed with McLain, including being a confidential informant for the CIA, these incidents were sufficient to justify McLain's recommendation that DW be involuntarily committed for an additional 180 days.

Finally, DW points to the fact that he was not delusional during the hearing to support his assertion that there was insufficient evidence to support a finding that he was gravely disabled. While DW's ability to testify clearly during the hearing demonstrates that he was capable of functioning clearly for a short period of time, that is not enough to outweigh McLain's testimony, especially taking the evidence in light most favorable to the petitioners.

We hold that substantial evidence supports the superior court's finding that DW was gravely disabled under RCW 71.05.020(25)(b).

D.    LESS RESTRICTIVE ALTERNATIVE

In the alternative, DW argues that the trial court erred in finding that a less restrictive alternative to involuntary commitment would not be in his best interests. But McLain testified that he did not believe DW was ready for discharge to a less restrictive alternative. And DW provides no meaningful argument to support this assertion. Therefore, we reject this argument.

CONCLUSION

Accordingly, we affirm the superior court's involuntary commitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
GLASGOW, J.